## HOBART-LEE TIE COMPANY *v.* KECK.

### Opinion delivered January 25, 1909.

1. PLEADING—DEMURRER—WAIVER.—Where a cause has proceeded to final judgment without the decision of the court upon a demurrer to the complaint, the demurrer will be considered on appeal as waived. (Page 127.)

2. NEW TRIAL—SURPRISE—CUMULATIVE TESTIMONY.—Where a complaint seeking to recover for temporary physical injuries was treated at the trial as amended to ask damages for permanent injuries, it was not error to deny defendant company a new trial on the ground of surprise and in order that it might procure rebutting testimony, if such testimony would be merely cumulative of other testimony in the case, and if defendant went to trial without asking for a continuance. (Page 127.)

3. NEGLIGENCE—DEFECTIVE PREMISES.—Where plaintiff went upon defendant's premises by invitation and while in exercise of due care was injured by the unsafe condition thereof, which condition was known to defendant's servant in charge of such premises, the defendant was liable. (Page 128.)

4. DAMAGES—EXCESSIVENESS.—Where the evidence tended to prove that plaintiff had his leg broken in two places, that he was put in a strait box and remained there for 25 days, that he had to lie on his back with his leg perfectly straight, that his leg was painful and his back and hips became very sore, and that anchylosis was likely to result from his injuries, a verdict of $1,000 damages was not excessive. (Page 129.)

Appeal from Madison Circuit Court; *J. S. Maples,* Judge; affirmed.

#### STATEMENT BY THE COURT.

This action was commenced in the Madison Circuit Court by David N. Keck against the Hobart-Lee Tie Company to re-

cover damages for personal injuries sustained by him while unloading ties in said company's yard.

The defendant interposed a general demurrer to the complaint, and also answered, denying all the material allegations thereof.

David N. Keck, detailed the circumstances connected with the injury as follows:

"Hollie Barber was tie inspector, and had charge of the yard of the Hobart-Lee Tie Company at Pettigrew, Arkansas, in 1907. On the 21st day of October of that year, I took a load of ties to Pettigrew. When I got to the yard of the company, I saw that ties had been piled over next to the street, and that there was a driveway between the main piles where people had been unloading and the piles next to the street. When I got to the place where this driveway divided, I stopped, and waited for Hollie Barber to come. In a short time he came up and asked me what I had. I told him, and he directed me to drive on down to this pile. I drove down as directed and stopped. He followed and took the dimensions of the ties. After doing this he stepped around the mules somewhere, and I began to unload. I took one of the ties in my arms, had one end on the pile and was trying to get the other end over on the pile, when the pile tumbled down and fell on my leg. My leg was broken in two places, and was put in a straight box and remained there for twenty-five days. I had to lie on my back with my leg perfectly straight. My leg was very painful, and my back and hips became very sore."

Hollie Barber, for the defendant, testified substantially as follows:

In October, 1907, I had charge of the tie yard of the defendant company at Pettigrew, Ark. On the 21st day of the month, I went in the yard and found Mr. David N. Keck there with a wagon load of ties. I told him that he had better go on down further and unload. I do not know whether or not he heard me. He never paid any attention to me. I took the lengths of the ties, and when I turned around I saw the pile was going to fall. I jumped back and turned from Keck. When I again looked around, Keck was holding his leg and some two or three ties had fallen on it.

Keck denied that Barber directed him to unload anywhere other than where he did unload.

Dr. Walter Acree testified: "I am a regular practicing physician. I saw Keck for the first time when I dressed his leg. I found upon examination that the lower third of the fibula, that is the outside bone of the right leg, was fractured transversely and longitudinally. The bone was fractured in the lower third, was fractured crosswise, and it was broken off and down into the joint and split up. On the other side, the bone which is known as the fibula was fractured transversely right in the joint and also lengthwise. There was a dent in the bone that one could put one's finger in. I never visited Keck again, but turned the case over to Dr. Boen. In my opinion the injury is permanent. It stands nine chances to one that anchylosis will follow."

During the trial, at the request of the defendant, Drs. Youngblood and Knight made an examination of the injured leg of Keck, and both testified that in their opinion the leg had not been fractured, and that the injury was not permanent.

There was a jury trial and a verdict for the plaintiff in the sum of one thousand dollars.

The counsel for defendant filed his motion for a new trial, and in support of the sixth and seventh grounds thereof filed the following affidavit of himself:

"That the complaint of the plaintiff did not disclose any allegation as to permanency of the injury alleged to have been suffered by the plaintiff, but merely stated that some of the ties fell upon his (plaintiff's) leg, right leg, and broke it. That both bones of plaintiff's right leg were broken; and alleged confinement, bodily pain and 'considerable expense' for medical attendance. That said complaint shows file on the fifteenth day of February, 1908, and that defendant was served with notice just the statutory time of ten days required. That defendant, having no information to the contrary, supposed that the proof would be confined to the allegation of the complaint, and had no means of knowing that the character of the injury sustained by the plaintiff was other than substantially as alleged. That, after the trial was in progress and the jury impaneled, the plaintiff was permited to treat his complaint as amended, and introduced proof tending to show that the injury incurred extended to the ankle

and would result in a permanent injury to the limb, accompanied by anchylosis. That defendant at once pleaded surprise, and stated to the court and counsel for plaintiff that the defendant was surprised, and that the defendant was not able at the present time to produce evidence to rebut such testimony, and that if the trial was forced to a conclusion at the present term, and the result was adverse to the defendant, the defendant would ask for a new trial on the grounds of surprise, in addition to such other grounds as might appear. But defendant made no objection at the time to the introduction of testimony touching the allegation that the plaintiff had suffered permanent injury, and made no motion to continue the case on the grounds of surprise. That the trial proceeded, and that on the first adjournment of the court thereafter, to-wit: about 10-15 P. M. on the evening of March 5th, defendant in consultation concluded to ask the court to cause the plaintiff to be examined touching his injury; and that on the morning of the 6th of March, being the morning following the adjournment at night, the court, at the request of the defendant, caused the plaintiff to submit to a physical examination by Dr. Fred Youngblood and Dr. M. Knight. That defendant, as its first testimony in defense, introduced said medical testimony, not knowing what had been the result of the examination or what conclusion had been arrived at therefrom; that said medical testimony was to the effect that the said plaintiff had not suffered any such injury as complained of. That there had been absolutely no fracture of either bone of the leg, and that, aside from a slight swelling that was apparent in the foot or ankle, there was no evidence of any injury. That defendant was unable during the course of the trial to produce other and further evidence touching the matter of said injury. That, if granted a new trial herein, it will take the usual legal steps to have in attendance at such new trial one Dr. Boen, who, as shown by the evidence, was in attendance upon the plaintiff from the time his injury was first dressed until such time as no further medical attendance was deemed necessary. That said Doctor Boen, as affiant is informed and believes, resides in a distant portion of the county, and that his attendance can be procured at the next term of this court. Also that the defendant will produce an X-ray machine with expert attendant at the next

term of this court with a view of testing the exact condition of plaintiff's right leg and ankle at the point or points alleged to have been injured, if permitted by the court. That such newly discovered evidence is material, and that under the facts and circumstances in this case defendant could not, with reasonable diligence, have discovered and produced said evidence at the trial of this case. And further this affiant sayeth not."

The record entry denying the motion for a new trial shows the following findings of fact by the court:

"Now, comes the defendant by its attorney and files motion for a new trial, and the court, after hearing the motion and argument of counsel, and being fully advised in the premises, doth find that in the evidence in chief of plaintiff there was proof tending to show a permanent injury to plaintiff which evidence was not objected to by counsel for defendant, and after plaintiff's evidence in chief had been closed it was suggested to the court by counsel for defendant that there was no allegation of a permanent injury in the complaint of plaintiff, and asks the court to suspend the trial to allow him to have said plaintiff examined by expert physicians, and, there being no objections by either party, the court consented to treat the complaint as amended so as to charge and allege a permanent injury, and defendant was allowed to have said examination made and introduced said expert testimony tending to show that there was no permanent injury, and the defendant did not further plead surprise in the progress of the trial nor make any motion to exclude from the jury any evidence introduced by plaintiff tending to show a permanent injury, nor to further postpone the trial on account of surprise or newly discovered evidence on the part of or in behalf of the defendant, and allowed the court to instruct the jury that permanent injury, if any existed, is an element of damages without any objection or exceptions on part of said defendant to such instructions."

The defendant has duly prosecuted an appeal to this court.

*E. B. Wall,* for appellant.

1. The demurrer should have been sustained. The efficient cause of the injury does not appear in the complaint. There were no contractual relations, and defendant owed plaintiff no duty. 53 Ark. 449.

2.   The demurrer was not waived by pleading over.   65 Ark. 495 ; 67 *Id.* 184.

3.   There was no privity between the parties.   No tort was alleged.   4 Am. & Eng. Enc. Law, 67.

4.   A new trial should have been granted on account of surprise.   66 Ark. 620.

*Johnson & Combs,* and *Harris & Ivie,* for appellee.

1.   The demurrer was waived by the cause proceeding to final adjudication without judgment thereon.   27 Ark. 235.

2.   Where the owner or occupier of premises by invitation induces persons to come upon his premises, he is under a duty to exercise ordinary care to render the premises reasonably safe for such use.   57 L. R. A. 307; 36 *Id.* 530; 54 *Id.* 321; 49 Ark. 277-9; 69 *Id.* 369.

3.   The motion for new trial was properly overruled.   No application was made for postponement.   57 Ark. 60; 55 *Id.* 557; 72 *Id.* 140.

4.   The newly discovered evidence was cumulative merely. 74 Ark. 377; 60 *Id.* 481; 52 *Id.* 120.

HART, J., (after stating the facts.)   Counsel for appellant first contends that the demurrer to the complaint should have been sustained.   The record shows that the cause proceeded to a final adjudication without the judgment of the court on the demurrer.   Hence it was waived, and can not now be considered by this court.   *Kiernan* v. *Blackwell, 27* Ark. 235.

2.   Counsel for appellant insists that there was error in the judgment of the circuit court in refusing to grant a new trial on the ground of surprise.   The facts relied on by counsel to sustain his motion in this respect are fully set out in his affidavit attached to his motion for a new trial, and the reason for the refusal of the court to grant it is set out in the judgment of the court.

Counsel relied upon the case of *Mutual Life Insurance Company* v. *Parrish,* 66 Ark. 612.   In that case the court held: "Where a party is surprised at the trial by testimony he knows to be false, and wishes to rebut it, it is his duty to ask a postponement or suspension of the trial till he can procure rebutting evidence ; but if he does not know whether the testimony is true

or false, nor whether he can rebut it, he will not be required to move for a continuance before he can ask for a new trial."

The state of facts as detailed by counsel himself does not bring this case within the exception. During the progress of the trial, at his request, the court permitted an examination of the physical condition of appellee's leg to be made by physicians selected by counsel for appellant. They testified that appellee's leg had not been broken, and that his injury was not permanent. Their examination disclosed to appellant's counsel as much information as he possessed at the time of filing his motion for a new trial. Instead of then asking for a continuance, counsel took his chances of a verdict and must now abide his election. Besides, the result of an examination of the injured leg with an X-ray machine would not be conclusive evidence, and at most would only be evidence cumulative of the testimony of Drs. Knight and Youngblood. *Miller* v. *Mintun,* 73 Ark. 183.

The motion does not show what the testimony of Dr. Boen will be, and, for aught we know, his evidence might corroborate that of Dr. Acree. In any event it could be only cumulative.

Counsel for appellant also insists that the court erred in giving instruction No. 6 to the jury.*

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Dooley,* 77 Ark. 561, the court said: "The bare permission of the owner of private grounds to persons to enter upon his premises does not render him liable for injuries received by them on account of the condition of the premises. But if he expressly or impliedly invites, induces or leads them to come upon his premises, he is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the premises, if such condition was the result of his failure to use ordinary care to prevent it, and he failed to give timely notice thereof to them or the public."

---

*Instruction No. 6 was as follows:

"If you find from a preponderance of the evidence that the pile of ties in question was in an unsafe condition, and the agent of defendant company was in position to observe and know that fact, and said agent of said defendant company directed said plaintiff to unload his ties upon the pile of ties in question, and plaintiff was using ordinary care and prudence while unloading or attempting to unload said ties, and by reason of the negligence or wrongful acts of said company or its agents plaintiff sustained an injury, then you will find for the plaintiff." (Rep.)

This principle is applicable to the present case. Appellee was upon appellant's premises by invitation, and if appellant's servant in charge of the yard knew of the unsafe condition of the pile of ties and directed appellee to unload thereon—appellee at the time using due care—this was actionable negligence.

The amount of the damages awarded was in the province of the jury. They show by their verdict that they believed appellee's testimony in that regard. Taking into consideration appellee's actual expenses, the time he was confined to his bed, the pain and suffering he testified he endured, we cannot say that the verdict was excessive.

Finding no prejudicial error in the record, the judgment is affirmed.