SEEMANN, Executor, Respondent, vs. KASTNER and another,
Appellants.

*December 14, 1921—January 10, 1922.*

*New trial: Newly-discovered evidence: Cumulative evidence: Due
diligence in preparing for trial.*

1. Where in an action by the buyer of potatoes against the sellers
   the question was whether the sellers had been notified within a
   reasonable time of the alleged frozen condition of the pota-
   toes, testimony was given on behalf of the sellers as to the
   time within which the frozen condition of potatoes would be-
   come manifest, and one of their witnesses testified as to an
   experiment he had performed, a motion for a new trial on
   the ground of newly-discovered evidence obtained by putting
   frozen potatoes in a temperature of 35 to 40 degrees and ob-
   serving how long it was before they indicated they had been ·
   frozen, will be denied, as the proposed evidence is merely
   cumulative to oral testimony produced at the trial.
2. Where defendants might have examined plaintiff before the
   trial, and from information so derived would have had oppor-
   tunity to present evidence of an experiment with frozen
   potatoes, and one of the defendants made frequent visits to
   the place of business of the seller and could have seen how
   the potatoes were stored, the motion for a new trial was
   properly overruled because of the lack of the diligence essen-
   tial in such an application.

APPEAL from a judgment of the circuit court for Mil-
waukee county: JOHN J. GREGORY, Circuit Judge. *Affirmed.*

One Frank Seemann, Sr., of Milwaukee purchased on
November 22, 1919, a carload of potatoes from defendants,
who were commission merchants of the same place. The
car was shipped from Pembine, Wisconsin, and the potatoes
delivered by defendants at Seemann's place of business on
the 22d and 24th of November and paid for on delivery.

On the trial in the civil court of Milwaukee county by
a special verdict the court found:

That there was a representation by defendants at the
time of the sale that the potatoes were in good, sound, and

merchantable condition.    The jury found they were in a
frozen condition at the time of the delivery at the place of
business and that the defendants were notified of such frozen
condition within a reasonable time after it had been learned.
They also found the reasonable value of the market price of
labor for the time reasonably necessary in sorting the frozen
potatoes, but at an amount less than that claimed by plaint-
iff.    No issue was raised as to the quantity of potatoes that
could not be sold or used out of the carload lot or of the
amount to be allowed for such quantity if plaintiff was en-
titled to recover.

Plaintiff's evidence was to the effect that such frozen con-
dition was first noticed about seven or eight days after the
potatoes were stored in the buyer's basement; that such base-
ment was kept at a temperature of about 35 to 40 degrees
Fahrenheit; that defendants were notified of such condi-
tion about two or three days after such discovery, and which
the jury found was a reasonable period.    Plaintiff also of-
fered evidence of those claiming to be familiar with the stor-
ing and keeping of potatoes to the effect that such frozen
condition would first reveal itself in potatoes kept at about
that temperature in from one to two weeks after storage and
that such was indicated by a moist or wet appearance on the
outside of the potatoes.

Defendants' evidence was to the effect that no such claim
was made until more than a month after such delivery
(which would have been an unreasonable time) ; and also
that such frozen condition would reveal itself within at
least one or two days after being so stored.

The evidence on both sides was in substantial accord that
the frozen condition would not be revealed by the outside
appearance of such potatoes while they remained frozen.

The trial commenced on April 29, 1920, and on that day
the plaintiff closed his testimony and witnesses were ex-
amined on behalf of the defendants and the case then ad-
journed to the following day, when the case was finished

and submitted to the jury. On May 8th motion for a new trial was made on the ground of newly-discovered evidence. As the basis for such relief plaintiff's attorney made and filed his affidavit reciting, among other things, as follows:

"Affiant further says that since the trial of said action, at which time it was unknown to the defendants or any of their witnesses, at what temperature the plaintiff claimed that the potatoes which were frozen were kept after they were unloaded from the car, so it was impossible to make any test in time for the trial of this action to ascertain as to what length of time it would take potatoes, kept at a temperature of 39 or 40 deg., to show effects of being frozen. That affiant procured the Wisconsin Cold Storage Company to make such test, from which it appears that within one hour after potatoes were kept in a temperature of 39 deg. or 40 deg. they would show that they were frozen, become wet and spongy. Affiant further says that owing to the fact that it was not known to the plaintiff (*sic*) until upon the trial of said action at what temperature said potatoes were kept, defendants were unable to produce witnesses to the facts aforesaid on said former trial."

Attached to the same was the certificate or affidavit of a storage or warehouse company in the following language:

"This is to certify that at the request of *Joseph Kastner* we put six (6) sound potatoes in our cold-storage room at a temperature of twenty-six degrees (26) on Saturday afternoon, May 8, 1920. On Monday morning, May 10th, at 8 o'clock a. m., we transferred the same potatoes into a temperature of 39-40. At 11 o'clock a. m. on May 10th, these same potatoes showed wet and spongy."

A new trial was granted by the civil court without stating the grounds therefor and upon payment to plaintiff by defendants of $15 and the witness fees as terms. From such order plaintiff appealed to the circuit court, where the order of the civil court was reversed and judgment directed for the plaintiff for the value of the damaged potatoes and the expense of sorting the same as found by the verdict. From such judgment the defendants have appealed.

The cause was submitted for the appellants on the brief of *F. F. Groelle* of Milwaukee, and for the respondent on that of *Harry M. Silber* of Milwaukee.

ESCHWEILER, J.   An examination of the record satisfies us that the defendants on their motion for a new trial did not present sufficient grounds to warrant the trial court in granting them that relief and that plaintiff's motion for judgment should have been granted.

On the first day of the trial defendants' counsel cross-examined the witnesses produced by plaintiff on the exact and material point involved on the motion for the new trial, namely, the length of time it would require potatoes to show their frozen condition by their outward appearance when kept at the temperature of the basement in which they were stored and which was shown to be 35 to 40 degrees Fahrenheit.   On the same day and as part of defendants' case a Mr. Gehl, who had been in the commission and produce business for thirty years and had handled potatoes in carload lots, was called and testified that a frozen potato stored at such temperature will become wet and thereby show such frozen condition within four hours and would be mushy or soft within twenty-four hours.   On the following day he was recalled, and on direct examination by defendants' counsel testified that after the adjournment on the preceding day he had placed some potatoes in storage at a temperature considerably below freezing and had brought them with him into court, and then testified and showed to the jury that such potatoes, when exposed to the temperature of the court room, then about 65 degrees Fahrenheit, would become wet and disclose their frozen condition within half an hour.   On this second occasion he was not again asked as to the length of time that would elapse before such condition would disclose itself if such frozen potatoes were kept at the temperature of 35 to 40 degrees Fahrenheit, nor any explanation then or now made as to why an experiment at such last

stated temperature was not or could not have been made similar to that then made.

The result of the experiment on May 8th to 10th and detailed in the affidavit accompanying defendants' motion for a new trial was made by another commission merchant than Mr. Gehl. The result of such experiment so detailed is in accord with the testimony of Mr. Gehl on that precise point as given on the first day of the trial and is purely cumulative and might well be deemed insufficient upon that ground alone. *Wilson v. Plank,* 41 Wis. 94, 96; *Sparling v. U. S. Sugar Co.* 136 Wis. 509, 514, 117 N. W. 1055; *Luebke v. Salzwedel,* 157 Wis. 601, 603, 147 N. W. 831. See note in L. R. A. 1916C, 1189.

It was as purely cumulative to the oral testimony already given as the proposed X-ray examination of an injured limb was held to be in *Hobart-Lee Tie Co. v. Keck,* 89 Ark. 122, 116 S. W. 183.

Furthermore, defendants might have availed themselves of an examination of plaintiff prior to the trial and have ascertained the necessary facts and have had ample opportunity to present on the trial the experiment recited in the affidavit. The record also discloses that one of the defendants made weekly visits at the place of business of plaintiff's decedent and could have seen where and how potatoes were stored from the first.

We think, therefore, that due diligence, which is an essential element in such applications (*Clithero v. Fenner,* 122 Wis. 356, 363, 99 N. W. 1027), was not shown. The proposed experiment was more of an after-thought than that which could be properly treated as newly-discovered evidence, and the circuit court was therefore clearly right in directing judgment for the plaintiff.

*By the Court.*—Judgment affirmed.