LOUISIANA NORTHWEST RAILROAD COMPANY *v.* MCMORELLA.

## Opinion delivered March 8, 1926.

1. APPEAL AND ERROR—MOTION NOT ACTED UPON.—A motion filed by defendant to require the plaintiff to make the complaint more definite and certain, which was never acted upon by the trial court, presents no question for decision in the appellate court.

2. PLEADING—EXHIBITS.—An account, exhibited with the complaint in an action at law, may be referred to as explanatory of the allegations of the complaint, although the action is not founded upon it.

3. RECEIVERS—AUTHORITY TO MAKE CONTRACTS.—Where a chancery court takes possession of a railroad and operates it through a receiver, it may authorize the receiver to make all contracts necessary to carry on the business, and the court's ratification of a contract made by the receiver makes it as binding as if the contract had been expressly authorized in the first place.

Appeal from Columbia Circuit Court; *L. S. Britt,* Judge; affirmed.

### STATEMENT BY THE COURT.

Elizabeth McMorella sued E. R. Bernstein as receiver of the Louisiana & Northwest Railroad Company, and the Louisiana Northwest Railroad Company, to recover the sum of $3,000 alleged to be due her for services performed for said railroad company.

The plaintiff was a witness for herself. According to her testimony, in January, 1919, she entered into a contract with George W. Hunter, as receiver of the Louisiana & Northwest Railroad Company, to perform certain

services for said railroad company, and continued in its service under the terms of the contract until George W. Hunter ceased to be receiver in October, 1920. Under the contract, as first made, she was to get out ties for the company, and to receive a commission therefor, and a stipulated salary per month. She was also required to look after certain lands which a railroad company was attempting to sell to Bulgarian colonists. In the summer of 1920, it was agreed that the plaintiff should be paid a monthly salary of $250 per month, and a commission of three cents per tie for all ties purchased up to a maximum of $100,000 annually, which would give her the maximum income of $6,000 yearly. The agreement was in writing, and was to operate retrospectively, so that it would begin the first of July, 1919, and was to continue from that day until the final discharge of the plaintiff, which could only be done by giving thirty days' notice to her. The contract was approved by the judge of the Federal court in which the receivership was pending. G. W. Hunter was discharged as receiver on October 1, 1920, and the plaintiff was discharged in a short time thereafter. During the time she was in the service of the railroad company she furnished 128,402 pine ties, 424 gum ties, and 14,867 oak ties. When Hunter resigned, he filed a statement of his account in the Federal court, which was approved by the judge of said court. His final statement included an itemized statement of the account of the plaintiff with the railroad company, and showed a balance due her as of November 1, 1920, of $2,467.46. The itemized account of the plaintiff as sued on is as follows:

"Magnolia, Arkansas,

September 8, 1922.

Receiver, Louisiana & Northwest Railroad, Dr.
      To Elizabeth McMorella, Cr.

| | | |
|---|---:|---:|
| Balance as of November 1, 1920 | | $2,467.46 |
| Salary for November 1920—23 days at $250 per month | | 191.59 |
| Legal expenses: McKay & Smith, attorneys | $500.00 | |
| Kate McKey, transcript, etc. | 100.00 | |
| Court fees | 198.50 | 798.50 |
| | | |
| Care of live stock: | | |
| Feed | 301.00 | |
| Caretaker | 145.00 | 446.00 |
| | | |
| Sundry expenses: | | |
| Railway fares between Magnolia and Mohawk | 90.00 | |
| Subsistence | 540.00 | |
| Automobile hire | 200.00 | |
| Travel | 192.36 | |
| Stenographer | 50.00 | 1,072.84 |
| | | |
| Total | | $4,976.39 |
| Less cash collection of colony applied | | 1,976.39 |
| | | |
| "Balance due | | $3,000.00 |

The first item of the account as above stated was the balance due her as shown by the report of George W. Hunter, as receiver, and approved by the court when he was discharged as receiver. The salary item of $191.59 was due her, because, under the terms of the contract, she was entitled to thirty days' notice, and continued in the service of the company for twenty-three days after she received notice that she had been discharged. The $500 which she paid McKay & Smith, attorneys, was for services performed by them in clearing the title to certain lands owned by the railroad company. For convenience, the legal title to these lands had been placed in the plaintiff, and it was necessary that she should bring suit in order to perfect the title to them. Under her agreement with the receiver she had employed McKay & Smith for that purpose, and had paid them $500, which was a reasonable

sum for their services. Pursuant to her agreement with the railroad company, she had conveyed the lands to them after the titles had been settled. The amount paid Kate McKey was for services as stenographer in making out a report of the proceedings and services of the plaintiff with regard to all matters and items embraced in carrying out her contract, and was worth $100. The $198.50 included the court costs which the plaintiff incurred in perfecting the title to said lands.

She had charge of the live stock belonging to the defendant at the time she was notified of her discharge, and continued to have the live stock fed and cared for until the railroad company relieved her of this responsibility. In this way she paid $301 for feed and $145 for a caretaker for said live stock. It was necessary that the stock should be fed and cared for until she was relieved of all responsibility in the matter. The amount of $90 was spent by her for railway fare in transacting the business of the railroad company, and she was entitled to this amount under her contract. The $540 for subsistence claimed by her was for hotel bills and other traveling expenses. She was allowed her traveling expenses under the terms of her contract with the railroad company, and actually spent more than the amount claimed. The $200 for automobile hire was for the purpose of transportation for herself in carrying on the business of the company when she could not secure speedy transportation on the railroad's trains. The amount of $192.36 was for traveling expenses when she was sent out on the business for the company. The $40 stenographer's fees was for letters written relative to the business of the company, and extended over a period of one year.

George W. Hunter corroborated the testimony of the plaintiff as to the terms of her contract of employment, and as to the amount due her, as shown by his report as receiver, which was approved and allowed by the Federal court.

Evidence was introduced by the defendant which tended to disprove the account of the plaintiff, and to

show that the railroad company was not indebted to her in the amount sued for or in any amount whatever.

The jury returned a verdict in favor of the plaintiff in the sum of $3,000, and from the judgment rendered against the defendant, Louisiana Northwest Railroad Company, an appeal has been duly prosecuted by it to this court.

*Henry Stevens,* for appellant.

*McKay & Smith,* for appellee.

HART, J., (after stating the facts). It is first contended by counsel for the defendant that the judgment should be reversed because the court erred in refusing to compel the plaintiff to make her complaint more definite and certain. The record shows that the defendant filed a motion to require the plaintiff to make her complaint more definite and certain, but that the motion was never acted upon by the court. It has been repeatedly held by this court that, unless a party secures a ruling on a demurrer, it will be presumed on appeal that the demurrer was abandoned. *Kierman* v. *Blackwell, Admr.,* 27 Ark. 235; *Hobart-Lee Tire Co.* v. *Keck,* 89 Ark. 122; and *Harbottle* v. *Central Coal & Coke Co.,* 134 Ark. 254, and cases cited. And, as a rule, a motion which, so far as appears from the record, was never decided below presents no question for decision in the appellate court. *Baker* v. *Martin,* 95 Ark. 62, and 3 C. J. p. 890, par. 797. It follows that this assignment of error is not well taken.

It is insisted that the judgment should be reversed because the item of $2,467.46 resulted from a colonization contract which the plaintiff made with George W. Hunter as receiver of the Louisiana & Northwest Railroad Company, which the receiver was not authorized to make. The record shows that George W. Hunter, as receiver, made a contract with the plaintiff to furnish ties for the railroad company, and to look after certain lands belonging to the railroad company which the railroad had sold to a Bulgarian colony. For her services the plaintiff was to receive a salary and a certain commission on the ties

furnished. Her own testimony, and that of George W. Hunter, show that she performed the services, and that the sum of $2,467.45 was due her. While the record does not disclose that the receiver was expressly authorized to make this contract, it does show that the receiver made a report to the court in which he explained the contract, and made a detailed statement of what the plaintiff had done under the contract. The court expressly ratified and approved the action of the receiver in the premises. It appears from the record that the services of the plaintiff in the premises were of great benefit to the railroad company, and that they were worth the amount claimed. The action of the court in ratifying the contract of the receiver in allowing the $2,467.46, made the contract as legal and binding as if it had been expressly authorized in the first place.

It is next insisted that the remaining items of the account do not fall within the allegations of the complaint. We can not agree with counsel in this contention. We do not deem it necessary to set out the whole complaint. It is sufficient to say that the whole account copied in our statement of facts was made an exhibit to the complaint. While the action is not founded upon the account, and is founded upon the contract which the plaintiff made with the receiver, still it may be referred to as explanatory of the allegations of the complaint. *Abbott* v. *Rowan,* 33 Ark. 593, and *Bouldin* v. *Jennings,* 92 Ark. 299.

When the allegations of the complaint are considered with reference to the account, we are of the opinion that the matters embraced in the account come fairly within the allegations of the complaint. The whole matter was developed by the proof, and it does not appear that the defendant was taken by surprise at any item of the account.

According to the testimony of the plaintiff, the amount of attorney's fees expended by her for the benefit of the defendant was reasonable, and no effort is made by the defendant to show to the contrary. Her expense

account was also reasonable, and was incurred while she was attending to the business of the defendant. It is inferable from the record that the railroad company was in an insolvent condition when it went into the hands of the receiver, and that the action of the receiver in managing it resulted in putting it back upon a sound financial basis. The plaintiff was of great assistance to the receiver in accomplishing this result. The railroad company had on hand the lands which it had attempted to colonize, and it was necessary to carry out its contracts in the premises. The whole matter was referred to the court and thoroughly explained by the receiver in the summer of 1920.

The judge of the Federal court which appointed the receiver, in discussing the affairs of the railroad company with the receiver, asked him about the contract with the plaintiff. It appears from the records that the railroad company had sold some of its lands to Bulgarian farmers who were very ignorant, and who were unable to carry out their contracts. It was necessary for the receiver to take over some of these lands and to wind up the contracts with the Bulgarians. The plaintiff was directed to take charge of these lands, and to handle the business for the railroad company under the receiver. On account of the financial condition of the railroad company, it was difficult to get ties, and for this reason arrangement was made with the plaintiff to get out the ties. It was almost impossible to buy ties through the regular channels, and, in addition, the prices were too high. The receiver made a detailed report of all of his actions in the premises, which was approved by the court. The report of the receiver showed the terms of the contract with the plaintiff and the balance due her. The general rule is that, where a court of chancery takes possession of a railroad and operates the same through a receiver, it may authorize the receiver to make all contracts necessary to carry on the business of such railroad. The action of the court in ratifying the contract made by the receiver with

the plaintiff made it as legal and binding as if the court had expressly authorized it in the first place.

It is also insisted that the judgment should be reversed because the amount paid by the plaintiff as attorney's fees was for her benefit, and not for the benefit of the railroad company. It is true that the legal title of the lands in question was in the plaintiff, but she held them in trust for the railroad company. According to her testimony, the legal services were performed for the benefit of the railroad company entirely. She acted throughout for the benefit of the railroad company, and did not claim any beneficial interest whatever in the lands. Her expense account, according to her testimony, was reasonable, and was authorized under her contract with the receiver. The respective theories of the plaintiff and of the defendant were submitted to the jury under proper instructions, and the jury was warranted under the evidence in finding for the plaintiff.

There is no prejudicial error in the record, and the judgment will be affirmed.