LOUISIANA & NORTHWEST RAILROAD COMPANY *v.* McMORELLA.

Opinion delivered April 23, 1928.

*Henry Stevens,* for appellant.

*McKay & Smith,* for appellee.

SMITH, J. E. R. Bernstein, as receiver of the Louisiana & Northwest Railroad Company, brought this suit in ejectment to recover the possession of the south half of the northeast quarter and the southeast quarter of the southwest quarter of section 21, township 19 south, range 20 west, from Miss Bettie McMorella, and alleged title to the lands sued for under a deed from her to the plaintiff as receiver, dated February 15, 1921.

The defendant filed an answer, in which she admitted that, in conjunction with G. W. Hunter, she had executed a deed dated February 15, 1921, to the plaintiff, as receiver, which described the lands sued for, but she alleged that this deed had been executed as a result of a mutual mistake in so far as the deed included the lands above described, as it was the purpose and intention of the parties, in the execution of this instrument, for the grantors therein to convey to the receiver of the railroad company only such lands as the grantors had title to as trustees for the use of the railroad company, and that the lands above described were not railroad lands, but were the individual lands of defendant, and had been included in the deed by mutual mistake. Other pleadings

were filed by the parties which amplified and denied these allegations.

Later the defendant filed an amendment to her answer, in which she alleged that, in 1922, she purchased the lands sued for at a sale for the 1921 taxes, and received tax deeds therefor after the expiration of the period of redemption. In a reply to this amended answer, the tax sale was alleged to be invalid for various reasons assigned, and the invalidity of the tax sale appears to be conceded.

Something of the history of the relationship between the defendant and the railroad company is set out in the opinion in the case of *Louisiana & N. W. R. R. Co.* v. *McMorella*, 170 Ark. 921, 282 S. W. 6; and it was shown in the record now before us that the defendant had been employed as manager for a colony of Bulgarians which the railroad company had established, and, in this connection, both defendant and G. W. Hunter, her co-grantor in the deed upon which this suit is based, had acquired title, in their respective names, to certain lands which they, in fact, held as trustees for the use of the railroad company. G. W. Hunter had been appointed receiver by the United States District Court at Shreveport, Louisiana, of the railroad company, and, after serving in that capacity for some time, had been succeeded by the plaintiff, E. R. Bernstein. This receivership was later settled and the receiver was discharged, and thereafter the railroad company continued the prosecution of this suit in its own name for its own use and benefit.

The title to the lands here in litigation was derived originally from one W. D. Wingfield, who made contracts to convey lands to various members of the Bulgarian colony. One of these contracts was to convey the lands here in litigation to George Petcoff, who entered into the possession of the lands and made certain improvements thereon, but did not complete his payments.

On June 10, 1917, Wingfield executed a deed to G. W. Hunter, which was apparently a conveyance to Hunter individually, but the testimony shows that the convey-

ance was in fact to Hunter as trustee. This deed described the lands here sued for and other lands, all of which were, no doubt, intended to be used in connection with the development of the Bulgarian colony. But this deed expressly recited the existence of an outstanding undischarged agreement on the part of Wingfield to convey the lands here in litigation to George Petcoff upon the payment of certain notes, which were there particularly described, executed by Petcoff to Wingfield's order. Similar contracts to convey other lands described in this deed were also there referred to, and the deed contained this paragraph:

"I have entered into contracts of sale for this land with the above-named parties with the terms of which said George W. Hunter is familiar; and this conveyance and warranty of title are subject to the claims of the said several parties; and, for and in consideration of this conveyance and the transfer of notes hereinbefore made, George W. Hunter agrees to carry out my contracts of sale of said lands with the above named parties when they pay off and satisfy the above mentioned claims which I am today transferring to said Hunter."

Defendant testified that, for value, she acquired Petcoff's interest under his contract with Wingfield, referred to in the deed from Wingfield to Hunter, and, as an evidence of that fact, exhibited a deed, which had been duly recorded, from Petcoff and wife to her, dated March 12, 1919. She also testified that she discharged the payments due by Petcoff under his contract with Wingfield, which entitled her to a deed from Hunter, and, as an evidence of that fact, she exhibited a deed, duly recorded, from Hunter to her, dated March 14, 1919.

Defendant paid the taxes in her own name for the years 1918, 1919 and 1920, but failed to pay the taxes for the year 1921, and purchased the lands at the sale for the taxes of that year in 1922, and in 1924 received the clerk's tax deeds hereinbefore referred to.

The deeds from Wingfield to Hunter, and from Petcoff to defendant, and from Hunter to defendant, above

referred to, apparently placed the legal title to the lands in defendant, and she was the apparent holder of the legal title thereto when, on February 15, 1921, she and Hunter executed the deed upon which this suit is based to Bernstein as receiver.

Defendant testified that she was not familiar with any of the lands by their legal descriptions, and knew each tract by the name of the Bulgarian who occupied it, and in this manner knew the lands in litigation as the Petcoff lands, but did not otherwise know their description. Her relation with the colony had terminated, and she knew that the receiver was making a final settlement in the Federal court of his administration of the railroad company's affairs, and her purpose in executing the deed to the receiver was to divest herself of all interest in any of the colony lands. Other lands were included in this deed in addition to the lands here in litigation. This deed contained the following recitals:

"The aforesaid lands were purchased by the said George W. Hunter in his capacity as receiver of the Louisiana & Northwest Railroad Company and with the funds of the said receivership, and the same were transferred by him to the said Miss Elizabeth McMorella for the purpose of conducting a colony thereon in connection with and for the benefit of the said Louisiana & Northwest Railroad Company. In acquiring and transferring said lands, as hereinabove set forth, the said George W. Hunter and the said Miss Elizabeth McMorella acted as agents and representatives of the said Louisiana & Northwest Railroad Company, and it was understood and agreed between them that the title to said lands would be held in trust by each and both of them for the aforesaid receivership. The said George W. Hunter and the said Miss Elizabeth McMorella declare that they have no right, title or interest, personally and individually, in and to said lands, and that, by reason of the facts aforesaid and on account of the resignation of the said George W. Hunter as receiver of the said Louisiana & Northwest Railroad Company, and the appointment of the said

Ernest R. Bernstein as receiver aforesaid, they do hereby bargain, sell, transfer, convey and deliver the aforesaid lands to the said Ernest R. Bernstein, receiver."

Defendant testified that she did not understand that she was conveying any lands owned by her individually, and she executed the deed under the misapprehension that the recitals above quoted were true, and that she was conveying only the trust or colony lands. She remained in the possession of the lands sued for, and continued to clear and improve them.

The court held, on the final submission of the cause, that the deed from Hunter and defendant to Bernstein erroneously included the lands here in litigation, and reformed the deed so as to exclude those lands, and quieted the title of the defendant thereto as against the plaintiff railroad company.

Several questions are argued in the able briefs of respective counsel which we find unnecessary to consider or decide; but we think the testimony, in its entirety, supports the finding and decree of the court below.

It is conceded that, before relief by way of the reformation of the deed can be granted, the testimony must show clearly and conclusively that a mutual mistake was made in the execution of the deed; and we think the testimony measures up to this standard. There appears to be no question that defendant had acquired and that she held the legal title to the lands at the time she joined Hunter in the execution of the deed to the receiver, and it appears equally clear that she intended to convey to the receiver only the trust or colony lands. Indeed, it is not contended that she intended to convey any other. It is insisted, however, that the lands here in litigation were, in fact, colony lands or railroad lands, and had become such under a deed from defendant to G. W. Hunter, executed May 12, 1919, and that the consideration for the conveyance from defendant to Hunter, receiver, was the discharge in part of a note for $28,000 which she had executed to the order of G. W. Hunter as receiver. It is also insisted that Bernstein, as successor of Hunter as

receiver, reported these lands as a part of the assets which he turned over to the railroad company upon the discharge of the receivership, and received credit therefor, and that defendant is estopped to question the title of the railroad company thereto.

In support of these contentions the deposition of Robert A. Hunter is relied upon. This witness became the attorney for Bernstein after the latter had been appointed as receiver in succession to G. W. Hunter. In a most candid statement this witness detailed the circumstances under which he prepared for execution the deed from G. W. Hunter and defendant to Bernstein as receiver. He stated that he found in the files "uncertified copies purporting to be copies of deed executed" by defendant to Hunter. There was, however, no proof of the execution of any such deed. Assuming, as he naturally did, that the lands there described were colony or railroad lands, and desiring to have conveyed to Bernstein, as receiver, all these lands, the lands described in the uncertified copy of the deed were included in the deed which he prepared. This testimony is not sufficient to prove the existence and execution of a deed from defendant to G. W. Hunter.

In response to one of the interrogatories, Robert A. Hunter made an exhibit to his deposition a copy of a note from defendant to G. W. Hunter for $28,000 which was found in the files. Indorsed on the back of the copy of the $28,000 note were credits aggregating $36,991.87, and among these credits was the item: "Petcoff land, $3,809.22." No witness, however, furnished any explanation as to how or when defendant had been given credit for this item, or as to why payments of approximately $37,000 had been made on a $28,000 note.

We conclude therefore that the testimony did not show that defendant had received the value of the lands by a credit therefor given her on the note which she had executed to the order of G. W. Hunter as receiver. Miss McMorella testified that she had not seen this copy of the note with the credits thereon prior to the time the same

was exhibited to her when her deposition was taken, and that she had not at any time been given credit in a settlement of her accounts with the railroad company for the value of the Petcoff lands.

It is insisted that, as the testimony shows that the railroad company was reorganized, and its stock acquired by new stockholders, who purchased the stock upon the assumption that the lands in litigation were a part of the assets of the railroad company, defendant is now estopped from asserting that the railroad company does not own the lands. In answer to this contention it may be said, first, that defendant was not a party to the suit wherein the receivership was pending, and she testified that she knew nothing about any reports which G. W. Hunter, as receiver, had filed; and secondly, it appears that the receivership of Bernstein was pending when this suit was begun, for Bernstein, as receiver, was the party plaintiff. Purchasers of the railroad stock, upon the discharge of Bernstein as receiver, must therefore have known that the title to the lands was in litigation and that the railroad's ownership of the lands was dependent upon the outcome of that litigation.

It is insisted that the relief prayed should not have been granted, for the reason that G. W. Hunter was not made a party to the suit. We think, however, that he was not an essential party to the suit. The testimony, in its entirety, shows that he had no interest in the lands here involved, and that he was a party to the deed in which it was conveyed for the purpose only of conveying other lands therein described in which he did have an interest. Granting or refusing the relief prayed in the cross-complaint could not affect any interest claimed by him, as he had no interest.

It is finally insisted that the claim of title to the lands under the tax deeds is inconsistent with the claim of defendant to the original title to the lands, and that the amended answer setting up these tax deeds should be treated as a substituted answer. But we think this was not the purpose or the effect of the amended answer. It

was filed as an amended answer, and not as a substituted answer. Defendant had paid the taxes for 1918, 1919 and 1920 in her own name, and this litigation was begun by filing the original complaint January 24, 1922. Defendant did not pay the taxes falling due that year, but allowed the lands to sell, and became the purchaser at the sale in June, 1922, thereafter. If she then owned the lands, her purchase at the sale was a mere redemption (*Roberts* v. *Miller*, 173 Ark. 38, 29 S. W. 814; *Inman* v. *Quirey*, 128 Ark. 605, 194 S. W. 858); but certainly this purchase did not divest her of any title which she otherwise had, or prevent her from asserting that title when sued for the possession of the lands.

We conclude therefore that the court below was warranted in finding that the deed upon which this suit is based was executed as the result of a mutual mistake, and that its reformation to the extent of excluding the lands sued for was properly ordered, and that decree is affirmed.