FAULKINBURY *v.* SHAW.

Opinion delivered June 15, 1931.

*Pratt P. Bacon* and *Will Steel,* for appellant.

*King, Mahaffey, Wheeler & Bryson* and *James D. Head,* for appellee.

BUTLER, J. This is an appeal from a verdict instructed for the defendant by the trial court at the close of plaintiff's evidence in a personal injury suit instituted by Mrs. Effie Faulkinbury against Percy A. Shaw, doing business as Shaw Gas & Plumbing Company, in the city of Texarkana, Arkansas. Mrs. Faulkinbury was injured in the store of appellee by the falling of a kitchen sink upon her ankle on the morning of February 15, 1930, while she was in the appellee's place of business as a prospective purchaser of merchandise for sale by appellee. The appellee therefore owed the appellant the duty of exercising ordinary care to maintain and conduct his business so as to avoid injuring her. *Alfrey Heading Co. v. Nichols,* 139 Ark. 466, 215 S. W. 712. Appellant alleged that the appellee failed in his duty to her in this particular by insecurely attaching a kitchen sink on the inside of his store to an old brick wall with wooden pegs driven therein upon which the sink was suspended, and that, because of the negligent fastening of said sink to said wall, the sink fell while appellee was in the exercise of due care, injuring her foot, ankle and leg.

The testimony on the part of the appellant tended to show that the building occupied by the appellee as a tenant, and in which he carried on the business of retailing articles of merchandise, was erected about 45 years before the occurrence resulting in the injury to the appellant; that the walls of the building were made of common or sand brick joined together with mortar made of lime, water and sand without the admixture of cement; that, by reason of the materials used in the construction of the walls, and on account of their age, the walls had

become and were soft and "pretty rotten"; that this was the general condition of the walls of this building which had been occupied by the appellee for approximately two years, and that he had had the building repaired while he was a tenant therein; that within the store and along the east wall the appellee had caused holes to be chiseled or drilled in the wall at certain intervals into which were driven wooden pegs, so that the outer ends thereof were flush with the surface of the wall. Into these pegs, hooks were screwed, and upon these hooks, about three feet above the floor, were suspended kitchen sinks in a row extending from the rear of the store to near the front of the building. Along the side of the building by this wall and these sinks was a narrow passageway for the use of the employees and customers. While appellant was in this passageway, in company with one of appellee's clerks, one of the sinks, weighing from 125 to 150 pounds, fell from the side of the wall, striking the appellant and injuring her.

In addition to the above facts, about which there is no dispute, a witness for the appellant, who testified that he was in the building business and had been for a number of years, and who had overhauled the building in question several times for the owner, and had also done some work therein for the appellee, testified that it was usual for sinks to be hung on the walls of the show rooms, and that two dealers in the city of Texarkana beside the appellee had their sinks suspended from the walls of their buildings, but that there was a difference in the brick in the walls of the building in which appellee did business and in modern brick, and also in the construction of the wall; that the brick used then was softer, and the mortar made without cement, while in the more modern buildings the bricks are harder, and cement used in the mortar, making the entire structure denser and more durable. Witness gave his opinion as to the cause of the sink falling, in this way: "I would say that if it fell it was on account of the wall being rotten, and when the pegs were

drove in there—just the weight hanging on those pegs—it would naturally pull out, and the brick would shell and the thing would fall down." Witness also stated that not all sinks were supported by the hooks alone; that some dealers, in exhibiting their sinks, put legs under them and some had brackets, and if supports were put under the sinks it was better than supports behind them.

Counsel for the appellee erroneously imply by their argument that the appellee was not liable unless he knew of the unsafe condition of the wall, and that the pegs driven therein could not be expected to hold. This view seems to have been the one adopted by the trial court, for in its direction to the jury it is said: "The court is of the opinion, gentlemen, that there isn't any evidence bringing home to the defendant the knowledge that this particular sink was dangerous to the plaintiff, or that she would probably be injured by the falling of the sink, or that the sink would fall. Taking that view of the evidence, gentlemen, it becomes the court's duty to instruct you to return a verdict for the defendant in the case."

For support of this view appellee apparently relies on the language used in the case of *Hobart-Lee Tire Co.* v. *Keck.* 89 Ark. 122, 116 S. W. 183, and *Alfrey Heading Co.* v. *Nichols, supra,* where the principle is laid down that the owner of premises who knows of their unsafe condition is responsible for injuries occasioned thereby to an invitee, who is ignorant of them and who is injured while using due care for his own safety. In those cases the evidence showed that the premises were unsafe, and were known to be so by the owners, and the statement declares the correct principle. However, it does not follow that the owner's liability is limited to only those cases in which he had actual knowledge of the unsafe condition of the premises, nor does the text in 45 C. J., at page 837, cited by appellee, sustain that view.

In the case of *St. L. I. M. & S. R. Co.* v. *Dooley,* 77 Ark. 561, 92 S. W. 789, the court held correct the following instruction: "If you find from a preponderance of

the evidence that the pile of ties in question was in an unsafe condition, and the agent of defendant company *was in position to observe and know that fact,* and said agent of said defendant company directed said plaintiff to unload his ties upon the pile of ties in question, and the plaintiff was using ordinary care and prudence while unloading or attempting to unload said ties, and by reason of the negligence or wrongful acts of such company, or its agents, plaintiff sustained an injury, then you will find for the plaintiff.'' In so holding, the court said: ''The bare permission of the owner of private grounds to persons to enter upon his premises does not render him liable for injuries received by them on account of the condition of the premises. But if he expressly or impliedly invites, induces or leads them to come upon his premises, he is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the premises, *if such condition was the result of his failure to use ordinary care to prevent it,* and he failed to give timely notice thereof to them or the public.''

In *St. Louis, I. M. & Sou. Ry. Co.* v. *Gaines,* 46 Ark. 555, it was held that the presumption was that the master had furnished suitable appliances for the performance of the work, and also that he was presumed to have had no notice of the defect, *and was not negligently ignorant of it.*

From a fair consideration of all the cases, it appears that the owner of the premises is liable to the invitee for injuries resulting from a dangerous condition existing on the premises of which he knows, and the invitee does not know; and the owner is also liable for injuries resulting from defective conditions of the premises, unknown both to the invitee and himself, where the circumstances surrounding the situation are such that he could and would have known of the dangerous condition had he exercised reasonable care and foresight for the safety of those who might come upon his premises by his invita-

tion, express or implied. Applying this principle to the facts stated, we think there was sufficient evidence to warrant the submission of the case to the jury for them to say whether or not from all the circumstances in the case the appellee knew, or ought to have known, of the defective condition of the walls, and whether or not he was negligent in suspending the sinks therefrom in the manner described. Negligence, like any other issue of fact, may be established by either direct or circumstantial evidence, or by both, and in this case, from the circumstances proved, including that of the falling of the sink, the jury might have inferred negligence on the part of the appellee in hanging the sink to the wall. 20 R. C. L. 180; *St. L. I. M. & So. Ry. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W. 786; *Mo. Pac. Ry. Co.* v. *Hull,* 182 Ark. 873, 33 S. W. (2d) 406.

During the examination of witness, Walter Harris, who had qualified as an expert builder and who had testified as to intimate knowledge of the building occupied by the appellee, the following question was asked: "In putting that sink up there, could it be told by the one putting the sink up there that this wall was old and that it would shell, and that it was soft brick?" The expected answer was that one putting up this particular sink at that place in the building, of this weight could have told by the slightest testing of these wooden pegs that they were not securely driven into the wall and could not be so driven. The question was objected to, and the objection was sustained. We think it was a proper question, and that the court should have permitted it to be asked and answered. The testimony shows that the witness had qualified as an expert, that he had an intimate knowledge of the building in question, and was qualified to give the opinion asked. *Collinson* v. *Kirtner,* 141 Ark. 132, 216 S. W. 1059, 8 A. L. R. 760; *K. C. So. Ry. Co.* v. *Henry,* 87 Ark. 452, 112 S. W. 967.

Much of the briefs of counsel are devoted to a discussion of the applicability of the doctrine of *res ipsa*

*loquitur* to the instant case. Any discussion by us of that doctrine would be merely in anticipation of what the court might or might not rule. Therefore it is unnecessary for us now to comment on the argument or decisions cited by counsel in their discussion of that doctrine.

The trial court erred in directing a verdict for the defendant. The case should have been submitted under proper instructions for the determination of the issues raised by the pleadings and testimony. For the error indicated, the judgment is reversed, and the cause remanded for a new trial.