St. Louis-San Francisco Ry. Company v. Call.

4-5281                                    122 S. W. 2d 178

Opinion delivered December 5, 1938.

J. W. Jamison, E. L. Westbrooke, Jr., and E. L. Westbrooke, for appellant.

E. G. Ward, for appellee.

HUMPHREYS, J. Appellee brought suit against appellants in the circuit court of Clay county to recover damages in the sum of $740, for killing one of her mules, injuring another and tearing up her wagon and harness at "Bare Crossing" east of Piggott through the alleged negligence of their servants in operating one of their trains. The alleged negligence consisted in a failure to give warning of the approach of the train, to stop after discovering the peril of the property and in running the train at a reckless speed.

Appellant, St. Louis-San Francisco Railroad Company, filed a motion stating it was an improper party to the action because at the time of the accrual thereof it was neither in the possession of or operating its property, but that the same was in the possession and being operated by trustees appointed by the U. S. District Court, Eastern Division, of the Eastern District of Missouri and entered its appearance in the cause for the sole purpose of presenting the motion. The court overruled the motion and then appellants, reserving its exceptions to the action of the court in denying a motion to dismiss, answered, denying all allegations of the complaint, and interposing the further defense, that if the property was damaged it was because of the contributory negligence of the party in charge thereof negligently driving same on appellant's tracks.

The cause was submitted to a jury upon the evidence introduced and instructions of the court resulting in a

verdict and judgment against appellants for $325, from which is this appeal.

If any error was committed by the court in refusing to dismiss the suit against the St. Louis-San Francisco Railway Company, the exceptions thereto were not preserved in the motion for a new trial and same is not before us for determination.

The record reflects, without dispute, that the view of the servants operating the train was obstructed so they could not see travelers on the highway, except through a narrow opening, by a levee which appellants permitted an improvement district to construct across its right-of-way up to its ties on both sides of the track and on top of which weeds have been permitted to grow up; that no post was erected to warn persons in charge of the train that a crossing was there and that the train was traveling at the rate of 35 miles an hour at the time of the collision.

The testimony is conflicting as to whether the statutory signals by the trainmen were given for the time and in the manner required by § 11135 of Pope's Digest.

The trainmen testified that they gave the signals, but Marvin Hinkle, who was 400 feet from the crossing, testified that the first signal given was within 360 feet of the crossing and Nick Moody, who was driving the team, testified that the train was within 60 or 75 feet from the crossing when it first whistled and that he was within 16 or 17 feet of the track and that although he tried to stop the team he could not do so before the train struck the team and wagon.

Mr. Story, the engineer, testified that had he been running the train at 15 or 20 miles an hour when he approached the crossing instead of 35 miles an hour he could have stopped the train before he ran over the team.

This court said in the case of Davis v. Scott, 151 Ark. 34, 235 S. W. 407, that: "Deceased knew the train was approaching, and, if he looked toward it after it came in sight, he may have been misled by the excessive speed, and on that account failed to properly judge his chance of getting across before the engine reached him. But, whether the deceased actually looked at the approaching

train or not it is fairly inferable that if the train had been under control at a lower rate of speed, the engineer, by throwing on the emergency, might have slowed down the train so that deceased could have gotten across in safety."

We think in view of the levee that obstructed the vision of the trainmen as well as travelers on the highway the rate of speed at which the train was traveling was a question which the jury might consider in determining whether appellants were negligent in operating same; and also that the jury might take into account in arriving at whether appellants were negligent the circumstance that it permitted a levee to be constructed across its right-of-way so as to prevent the trainmen from observing travelers on the highway and so as to prevent travelers from seeing trains approaching the crossing.

In addition to the physical conditions at and near the crossing for which appellants were responsible, the jury were, of course, warranted in taking into consideration whether signals were given in determining whether appellants were negligently operating the train when it ran over the team.

The killing of and injury to the property being admitted the law presumes appellants were negligent and the burden rested upon them to show they were not negligent and to show that the driver was guilty of contributory negligence. They have not met the burden by the undisputed evidence, and we cannot say as a matter of law that the court erred in refusing to instruct a verdict for them.

The instruction on the lookout statute, Pope's Digest, § 11144, was not abstract and erroneous for the reason that the engineer testified that he could have avoided the injury had he been running at a speed of 15 or 20 miles an hour, and the jury may have found or would have been warranted in finding that he was running at an excessive rate of speed in view of the physical conditions at and near the crossing.

Appellant contends that the verdict is excessive, but according to the evidence the actual value of the mule

killed, the damage to the one injured and the damage to the wagon and harness amounted to as much or more than $325, for which a verdict was returned.

No error appearing, the judgment is affirmed.