KANSAS CITY SOUTHERN RAILWAY Co. *v.* WINTER.

4-9157                                          228 S. W. 2d 1001

Opinion delivered April 17, 1950.

*Hardin, Barton & Shaw,* for appellant.

*Shaver, Stewart & Jones,* for appellee.

HOLT, J. Appellee sued appellant to recover damages to his automobile which resulted when his car was struck by one of appellant's Diesel powered passenger trains at a public street crossing in the town of Wilton, Arkansas. He alleged that appellant's negligence consisted in its failure to keep a proper lookout, to give statutory signals (Ark. Stats. 1947, § 73-716), and in obstructing the view by placing a car of creosoted poles "on the side track adjacent to the side crossing."

Appellant answered with a general denial and affirmatively pleaded the contributory negligence of appellee.

A jury trial resulted in a verdict in appellee's favor for $1,000. From the judgment is this appeal.

For reversal, appellant earnestly argues that the evidence was insufficient to support the verdict and that appellee's own negligence was the sole proximate cause of the collision and resulting damage.

Appellant has a line of railroad, running north and south through the town of Wilton, with its depot on the east side of the track. A road or street runs east and west immediately north of the depot, crossing the railroad track at right angles. A spur, or a house track, leads off from the main line track at a point 200 feet south of this street crossing and runs southward.

At about 9 o'clock a. m., December 20, 1948, on the occasion of the collision involved here, there was a car of creosoted poles spotted on the house track at a point approximately 231 feet south of the crossing where the mishap occurred.

Appellee, together with his wife (sitting on the front seat with him), his daughter and another party sitting on the back seat, approached this crossing in his car at a speed of about twelve or fifteen miles per hour. Appellee testified that he listened, and looked both ways, alternately, as he approached the crossing. His wife was

also looking and listening. He did not stop the car as he approached the crossing. The railroad track is on a slight elevation and there is a slight rise up to and over the track as they approached the crossing. They did not hear the train, a whistle or a bell. They were about twelve feet from the crossing when appellee first saw the engine of the train coming into view from behind the car of poles which tended to obstruct his view. The train was moving about forty-five miles per hour. Wilton is a nonstop town. Appellee applied his brakes and in trying to avoid a collision, turned his car to the right. The engine passed and cleared his automobile but the side of the baggage car collided with it. There was also testimony that after the train stopped, it backed up and did some additional damage to appellee's car.

Considering the evidence in its most favorable light in favor of appellee and the jury's verdict, as we must, we cannot say, as a matter of law, that there was no substantial evidence on which the jury could have based its verdict. In the circumstances, whether appellee's view as he approached the crossing was obstructed, whether proper signals were given, and a proper lookout kept, were questions that the jury might properly consider in determining the negligence of appellant. *St. Louis-San Francisco Ry. Company* v. *Call,* 197 Ark. 225, 122 S. W. 2d 178.

The question whether appellee was guilty of contributory negligence, and also if the jury should find him negligent, whether his negligence equalled or exceeded that of appellant, were submitted to the jury.

At appellant's request, the court instructed the jury in accordance with our socalled "Comparative Negligence Statute," (Ark. Stats. 1947, § 73-1004, as amended by Act 140 of 1945 to cover property damage): "* * * Before the plaintiff (appellee) could recover anything in this case, he must prove by a preponderance of the evidence that there was negligence on the part of the operatives of the train, as alleged in the complaint, and even though you might find and believe from the evidence in the case that there was some negligence on the part of

the operatives of the train, as alleged in the complaint, yet unless you find that negligence was equal to or greater than that of the plaintiff, if any, then the plaintiff could not recover, and even though you might find and believe that the negligence on the part of the operatives of the train was equal to or greater than that of the driver of the automobile, then if you should find for the plaintiff, you should reduce his damages in proportion to the measure or degree of his negligence, as compared with that of the operatives of the train in causing and bringing about the damages resulting therefrom, if any.''

Appellant cites cases in support of his contention of the insufficiency of the evidence, but it suffices to say that all are distinguishable on the facts in each case.

Appellant next.argues that the court erred in permitting appellee to testify, on the question of damages, that prior to the collision, he had his car overhauled at a cost of $512 by putting in a new motor, new radiator, and overhauling the front, and the further testimony, over his objection: ''Q. You knew the car before the accident you had? A. Yes, sir. Q. You could see the shape it was in after the accident? A. Yes, sir. Q. Based on that, did it look like it had any value? Q. Has it any value except salvage value? A. That is all — salvage value.''

He says: ''The measure of the damage, of course, is the difference between the market value before the accident and that immediately afterwards.''

We think no error was committed in this connection. There was evidence that the car, after the mishap, had no value other than salvage of about $100, that it was worth about $1,000 before the collision, and if $898 were expended on repairs, it would have a value of $1,012. This testimony was proper in arriving at the measure of damages, which is conceded to be the difference between the fair market value before the collision and immediately thereafter. *Golenternek* v. *Kurth,* 213 Ark. 643, 212 S. W. 2d 14, 3 A. L. R. 593.

Appellant also contends that the court erred in giving certain instructions requested by appellee and in refusing a number requested by appellant. The record reflects that five instructions were given on behalf of appellee and nine for appellant. We do not discuss each of these instructions separately. It suffices to say that we have carefully examined all and find no error in any of them. They appear to have fully and fairly covered every phase of the case.

Finally, appellant says: "The court's so-called emergency instruction, given of his own motion to the jury after reporting that it failed to reach a verdict, contains clear reversible error, in the following language, to-wit: 'I believe it is a case that you men are capable of going in and sitting down and thrashing the thing out, and doing what you think is right and just in this lawsuit.'"

The vice in the instruction, says appellant, is that, in effect, it gave the jury the power to do "what they think is right and just," when the only power accorded them was " to do what the evidence and the law directs." We are unable to find prejudicial error in this admonition of the court. We cannot agree that the jury, presumably composed of "persons of good character, of approved integrity, sound judgment and reasonable information," (Ark. Stats. 1947, § 39-206) could have been misled, to appellant's prejudice, by such an admonition, the effect of which, it seems to us, was to do no more than to admonish the jury to do what was right and just in the light of all the facts, and instructions previously given. No abuse of the trial court's power has been shown.

In *McNew* v. *Wood*, 204 Ark. 530, 163 S. W. 2d 314, we held: (Headnote 6) "The practical administration of the law requires that trial judges shall have the power to admonish the jury as to the desirability of reaching a verdict," citing *Graham* v. *State*, 202 Ark. 981, 154 S. W. 2d 584.

On the whole case, finding no error, the judgment is affirmed.