CHICAGO, ROCK ISLAND & PACIFIC RAILROAD
COMPANY *v.* WILLIAMS.

4-9944                                        253 S. W. 2d 349

Opinion delivered December 22, 1952.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*L. B. Smead* and *W. C. Medley,* for appellee.

J. SEABORN HOLT, J. Appellee, Williams, sued to recover $200 damages to a four year old Hereford bull for injuries alleged to have resulted when he was struck by one of appellant's freight trains August 21, 1950, and also for damages in the amount of $165 for a cow alleged to have been killed by another one of appellant's freight trains on December 24, 1950. Both animals were struck at night.

There was a jury verdict for appellee for the full amount sought in each case and from the judgment is this appeal.

Appellant conceded that ''the appellee presented evidence that justified an inference that his livestock

was killed or wounded by the running of trains and that the presumption of negligence arose,'' (Ark. Stats. 1947, § 73-1001).

We said in *St. Louis Southwestern Railway Company* v. *Vaughan,* 180 Ark. 559, 21 S. W. 2d 971: ''When the evidence shows that an injury was caused by the operation of a train, the presumption is that the company operating the train was guilty of negligence, and the burden is upon such company to prove that it was not guilty of negligence. Appellant is correct in its statement that this presumption can be rebutted and overcome by testimony on the part of the defendant. The only question in this case is, did the appellant overcome this presumption by evidence? The Supreme Court of the United States recently said, in construing a statute similar to the Arkansas statute: 'The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done, the inference is at an end, and the question of negligence is one for jury upon all the evidence','' and in *St. Louis-San Francisco Ry. Company* v. *Call,* 197 Ark. 225, 122 S. W. 2d 178, we said: ''The killing of and injury to the property being admitted the law presumes appellants were negligent and the burden rested upon them to show that they were not negligent. . . . They have not met the burden by the undisputed evidence.'' See also *St. Louis, I. M. & So. Railway Company* v. *Chambliss,* 54 Ark. 214, 15 S. W. 469.

The evidence when considered in its most favorable light in appellee's favor, as we must do, tends to show that the point where the bull was injured and also the place where the cow was killed (neither being at a crossing) were on a straight stretch of track—for more than a mile. The bull was struck on the night of August 21, 1950, seriously injured, and its usefulness impaired. Appellant's engineer testified that he was operating the Diesel engine of the train and ''I did not see any stock on the track. I saw a cow's head sticking out of the brush about six or eight feet out from the track.'' The cow (bull) was on the right side of the track—track was

straight—and he was "about 250 ft. away" when he saw him. His headlight was burning and in good condition and "so far as I could see" no part of the engine struck the bull. He denied that he had told appellee, Williams, that he hit a cow or bull, however, Williams testified that he did. There appears to be no evidence that any warning signals were given or that brakes were applied after the bull was first seen.

Appellee testified that he found tracks of the bull where he had crossed the railroad track and that he found the bull lying by the side of the track about 20 ft. "from the rail at the bottom of the dump * * *. The right of way had grown up in saplings three or four foot and he went down through them—they were knocked down."

As to the cow, there was evidence on the part of appellant that when first seen by the engineer, she was about 225 ft. away and about 45 ft. from the left of the track, that she "threw up its head—you don't know which way they are going to go—and she went across the track and the engine went by." He blew the whistle, could not stop the train in time, was going about 25 miles per hour. "Q. You made no effort to put the brakes on? A. No, sir, I did shut the throttle off. Q. When did you first see the cow? A. She rolled out on my side, but the fireman saw her."

When all of the evidence is considered, we are unable to say that there was no substantial evidence on which the verdict could be based. Whether in the circumstances, the failure of the operators of the train to give any warning signals and apply the brakes in the case of the bull after discovering him and their failure to apply the brakes after discovery of the cow, amounted to negligence on the part of the railroad, were issues for the jury, and upon which reasonable minds might differ or draw different conclusions, and therefore we must allow the verdict to stand.

Affirmed.

GEORGE ROSE SMITH, J. (dissenting). With respect to the killing of the cow I see no difference between this

case and *Chicago, R. I. & P. R. Co.* v. *Reeves,* 217 Ark. 33, 231 S. W. 2d 103. In both cases the engineer testified that after a warning whistle had been sounded the animal suddenly ran in front of the locomotive at a time when it was too late to stop the train. In neither case is there any proof of negligence on the part of the defendant, other than the statutory presumption which disappears when rebutting evidence is presented. Since I regard the *Reeves* case as controlling I would affirm the judgment only on condition that the damages for the death of the cow be remitted.

WARD and ROBINSON, JJ., join in this dissent.