Kansas City So. Ry. Co. *v.* Smith.

5-775                                         283 S. W. 2d 860

Opinion delivered November 21, 1955.

*Hardin, Barton, Hardin & Garner,* for appellant.

*Shaver, Tackett & Jones,* for appellee.

George Rose Smith, J.   The appellee recovered judgment for $1,205 as the value of nine head of cattle killed by the appellant's trains.   The case involves eight distinct incidents, two cows having been killed upon one

occasion by the same train, and resulted in nine separate verdicts for the plaintiff. The appellant admits that its trains killed eight of the nine animals but contends that it was entitled to an instructed verdict upon each count of the complaint. For convenience of discussion the eight counts may be divided into three subdivisions.

I. Upon five of the occasions—those of April 20, May 14, August 4, August 29, and September 25, 1954— the railway engineer made no effort either to stop the train or to slacken its speed after discovering cattle on or near the railroad track. Although there is evidence that a cow may be seen for as much as half a mile away, the jury were justified in believing that no attempt is made to reduce the train's speed when an animal is sighted at a distance. The engineers and firemen explain that the sounding of the whistle may startle a grazing beast and cause it to run across the track in fright. Hence the trainmen think it best to try to slip past the animal without disturbing it unnecessarily. If, however, the cow shows any indication of getting upon the tracks the whistle is blown in repeated short blasts in an effort to scare the animal back. There is much testimony from which the jury might have concluded that even when a beast is seen to be approaching the track no attempt is made to slacken speed unless the distance is so great that the train can actually be brought to a standstill in time to avoid a collision.

This practice of continuing at full speed unless a complete stop can be made does not as a matter of law absolve the railroad company from the presumption of negligence that arises from the statute, Ark. Stats. 1947, § 73-1001. In several cases the failure to moderate the train's speed has been a basis for, or a factor supporting, the view that the statutory presumption has not been indisputably overcome. *St. Louis, I. M. & S. R. R. Co.* v. *Hagan,* 42 Ark. 122; *St. Louis & S. F. R. Co.* v. *Carlisle,* 75 Ark. 560, 88 S. W. 584; *Chicago, R. I. & P. R. Co.* v. *Williams,* 221 Ark. 404, 253 S. W. 2d 349.

Varied situations are presented by the case at bar. The cow killed on August 29 was sighted half a mile away. When the train was "a thousand feet or less" from the animal the engineer first observed an indication that the cow would come upon the track. He blew the whistle—"that's all I could do"—but the cow "made a sudden dash on the railroad track to get across and almost made it." From other testimony it is reasonable to believe that by a routine application of the service brakes the train's speed could have been materially reduced over a distance of 1,000 feet, and still more so at half a mile. It cannot be said as a matter of law that the jury were wrong in thinking the animal would have escaped had any effort at all been made to slow the train.

The other four incidents in this first group all involve the railway's practice of making no attempt to slacken speed when an animal is first observed. In the instance that is perhaps most favorable to the appellant, that of August 4, the engineer testified that the cow was 200 feet away when he discovered her on the tracks. This testimony is to some extent contradicted by the fireman, who said that the animal was grazing on the side of the track when he first saw her at a distance of only seventy-five feet. In passing it may be remarked that such inconsistencies in the testimony have been held to justify the jury's conclusion that the witnesses are discredited. *Little Rock & F. S. Ry. Co.* v. *Jones*, 41 Ark. 157; *St. Louis S. W. Ry. Co.* v. *Hutchison*, 79 Ark. 247, 96 S. W. 374; *Missouri Pac. R. Co.* v. *Bain*, 170 Ark. 594, 280 S. W. 625. But, apart from these discrepancies in the proof, the jury had all along the problem of deciding whether a slackening of the train's speed would have avoided the accident. To what extent a moving train may be slowed over a given distance is not a matter which the jury may be taken to know from everyday knowledge; proof is needed. Since the appellant offered no evidence on this point, taking the position that no reduction in speed is called for unless a full stop is possible, it cannot be said that the presumption of negli-

590

gence was incontrovertibly overcome in any of these instances.

II. On two occasions—those of April 26 and May 4—the engineer did apply the brakes in an attempt to stop his train. In the latter instance the testimony is so contradictory that the jury, under the cases last cited, was not required to believe either eyewitness. The engineer says that the accident occurred at 9:50 a.m.; that he sighted a herd of cattle crossing the tracks; and that he applied first the service brakes and then the emergency brakes in his attempt to stop. The fireman, in testimony that we cannot bring into harmony even by a careful study of the record, stated on direct examination that he observed fifteen or twenty cattle crossing the tracks, but he says the incident happened at night— "I distinctly remember because it was dark." He could not then be sure that one cow had been fatally injured, but on the return trip the next morning he saw the animal's dead body. Yet on cross-examination this witness stated, without explanation, that the occurrence was in the daytime. If the testimony cannot be reconciled by a study of the record it could hardly be harmonized by the jury upon a single hearing.

In the other instance, that of April 26, the statutory presumption was clearly overcome by the defendant. The engineer testified that he saw from 50 to 100 cattle on the track at night, that he began sounding the whistle, and that he immediately applied the emergency brakes but was unable to stop in time. Many cases hold that such uncontradicted proof rebuts the presumption of negligence. *Kansas City, F. S. & M. Ry. Co.* v. *King*, 66 Ark. 439, 51 S. W. 319; *St. Louis, I. M. & S. R. Co.* v. *Landers*, 67 Ark. 514, 55 S. W. 940; *Chicago, R. I. & P. Ry. Co.* v. *Fowler*, 186 Ark. 682, 55 S. W. 2d 75. Indeed, the appellee's only argument on this count is that the headlight might have been defective. This contention is based solely on the engineer's statement that all headlights are not of exactly the same brilliance, which obviously falls short of proof that the light in question was inferior.

III. The appellant denies that a train struck the appellee's bull on September 19 and contends that the evidence is insufficient to show that the animal was killed by a train. We think the evidence supports the verdict. The bull was found, seriously injured, about 200 yards from the track. A witness, searching for the animal, was able to find it by starting at the track and following the trail left by the beast as it dragged itself to a mudhole. A section foreman told the plaintiff's son that the bull had been killed by a train and might be destroyed. It is argued principally that no witness described any marks on the bull that might have resulted from the impact with the train. The quick answer to this contention is that, with the exception of the section foreman, no witness was asked about such wounds, although there was every opportunity for the question to be put. When the section foreman saw the animal it was mired down with only its back showing; so his failure to see any marks falls short of proof that there were none.

The judgment is affirmed except as it relates to the cow killed on April 26; that part of the judgment, in the sum of $120, is set aside and the cause dismissed.