GOLENTERNEK *v.* KURTH.

4-8530 212 S. W. 2d 14

Opinion delivered June 14, 1948.

Rehearing denied July 5, 1948.

*Buzbee, Harrison & Wright,* for appellant.

*Agnes F. Ashby* and *J. H. Lookadoo,* for appellee.

ED. F. McFADDIN, Justice. Appellant, Mrs. Sarah Golenternek, is engaged in the buying of hides in Shreveport, Louisiana. From that city, appellant's agents drive trucks to various cities, and buy hides, and transport them in said trucks to Shreveport. One of appellant's trucks (a two-ton truck) containing a load of hides, and en route from Hot Springs, Arkansas, to Shreveport, was wrecked at Gurdon, Arkansas, on Friday, January 31, 1947. Thereupon, R. C. Frazier, a regular employee of appellant, proceeded in one of her one-ton trucks from Shreveport to Gurdon, and transported about half of the load of hides from the wrecked truck to Shreveport. Then on Sunday, February 2, 1947, Frazier—accompanied by his wife and children—returned in the one-ton truck from Shreveport to Gurdon. Instead of stopping in Gurdon and getting the remaining hides and returning to Shreveport, Frazier drove on to Arkadelphia; and there—while driving appellant's truck—had a collision with a car driven by appellee, Mrs. Dorothy Kurth; who sued appellant for personal injuries and property damages occasioned by the collision. From a verdict and judgment for appellee, there is this appeal presenting the issues now to be discussed.

I. *Admission of Evidence.* Appellant admitted that Frazier was her employee, and that he was driving her truck at the time and place of the collision, and that Frazier was paid a regular salary by her; but she insisted that Frazier was outside the scope of his employment at the time and the place of the collision. She urged that Frazier's duties required him to load the hides at Gurdon and return to Shreveport; that instead of so do-

ing, he proceeded about 18 miles past Gurdon to Arkadelphia, and was thus on a mission of his own and outside the scope of his employment at the time and place of the collision. Frazier so testified. Appellee insisted that when the collision occurred in Arkadelphia, Frazier was actually en route from Gurdon to Hot Springs in the course of business for the appellant. As bearing on this trip to Hot Springs, appellee testified to a declaration made to her by Frazier at the scene of, and immediately after, the collision. We copy from the transcript:

"Q. Did he (Frazier) tell you then where he was going? By Mr. Harrison: Now, we object to any statements made by Mr. Frazier relating to his agency or authority or the mission he was on, and on the question of liability for the accident on the part of the defendant company inasmuch as any declaration on his part would not be admissible. By the Court: She can state where he said that he was going, but the matter of agency is admitted, I believe. By Mr. Lookadoo: I am not introducing it on the matter of agency, as that is admitted. By Mr. Harrison: Yes, agency is admitted, but it is specifically denied in that admission that he was acting within the scope of his employment, and we object to any statement he may have made there. By the Court: Overruled. By Mr. Harrison: Save our exceptions. By Mr. Lookadoo: Q. What did he tell you? A. He called me over to one side immediately after that and told me that he was on his way to Hot Springs to get some furs and was going back to Gurdon to pick up some more. Q. Did he tell you that he was making the trip for the defendant. A. Yes sir. By Mr. Harrison: Now, at the conclusion of these questions and answers relating to his declared mission—Mr. Frazier's declared mission to Mrs. Kurth—the defendant moves that those questions and answers be stricken from the record for the same reasons that those declarations are inadmissible against the defendant. By the Court: Overruled. By Mr. Harrison: Save our exceptions."

Was the said statement by Frazier to the appellee admissible on the issue of scope of employment? That

646

is the question presented. Appellant has cited us to many cases from other jurisdictions holding a declaration such as this one to be inadmissible. Some of these cases are: *Otero* v. *Soto,* 34 Ariz. 87, 267 Pac. 947; *Deater* v. *Pa. Machine Co.,* 311 Pa. 291, 166 Atl. 846; *Lewis* v. *Word Transfer Co.* (Tex.), 119 S. W. 2d 106; *Webb-North Motor Co.* v. *Ross* (Tex.), 42 S. W. 2d 1086; *Wenell* v. *Shapiro,* 194 Minn. 368, 260 N. W. 503; *Moore* v. *Rosenmond,* 238 N. Y. 356, 144 N. E. 639. But, regardless of the holding in other jurisdictions, we are firmly committed to the holding that such a declaration as was here made by an admitted agent is admissible on the issue of scope of employment. In *Mullins* v. *Ritchie Grocer Co.,*[*] 183 Ark. 218, 35 S. W. 2d 1010, a declaration of an admitted agent was offered, and we said:

"It will be remembered that appellant offered to show by witness that he helped John Lewis to repair his automobile between five and six o'clock in the afternoon near Gregory City, and that, while doing so, Lewis told him he was trying to collect some accounts or bills for the Ritchie Grocer Company. It is true that it is well settled that the fact of agency cannot be established by the declarations of the agent, but this was not the purpose of the testimony. The fact of agency had already been established by evidence which was not attempted to be contradicted. The offered evidence was for the purpose of showing that Lewis was acting in the furtherance of his master's business or in the course of his employment as traveling salesman in a place where his duty called him, and the evidence was competent for that purpose."

In the concluding paragraph the court further said: "His statement tended to show that he was acting in the course of his employment, and was admissible to show that he was acting within the real and apparent scope of his authority; and not for the purpose of establishing his agency, which had already been established by undisputed evidence."

[*] A recent case construing this cited case (although not on the point here discussed) is that of *Ford & Son Sanitary Co.* v. *Ranson, ante,* p. 390, 210 S. W. 2d 508 (opinion delivered April 26, 1948).

Some of the other cases to like effect, and reaffirming the rule stated in *Mullins* v. *Ritchie Grocer Co., supra,* are: *Casteel* v. *Yantis-Harper Tire Co.,* 183 Ark. 475, 36 S. W. 2d 406; S. C. 183 Ark. 912, 39 S. W. 2d 306; *Rex Oil Corp.* v. *Crank,* 183 Ark. 819, 38 S. W. 2d 1093; and *Marshall Ice & Electric Co.* v. *Fitzhugh,* 195 Ark. 395, 122 S. W. 2d 420. So we hold that Frazier's statement, here challenged, was admissible under the facts in this case. With this challenged declaration in the record, an issue was made for the jury on the question of scope of employment; and the case was submitted under a proper instruction covering that issue.

II. *Ownership of, and Damages to, the Car Driven by Appellee.* Appellee testified that the car she was driving had formerly been owned by her divorced husband, but had been allotted to her in a property settlement at the time of her recent divorce. Evidence to the contrary was the certificate of registration of the car in the husband's name. But, even so, appellee's testimony made a jury question as to her ownership. She was in possession of the automobile; and possession of personal property is *prima facie* evidence of title and ownership. *Black* v. *Roberson,* 87 Ark. 641, 112 S. W. 402; *Forrest* v. *Benson,* 150 Ark. 89, 233 S. W. 916; see, also, 50 C. J. 786.

The jury awarded Mrs. Kurth $700 for damages to the car. The measure of damages—in a case such as this one—is the difference between the market value of the car immediately *prior* to the injury and the market value immediately *after* the injury. See *Kane* v. *Carper-Dover Merc. Co.,* 206 Ark. 674, 177 S. W. 2d 41, and cases there cited. The plaintiff testified that she had been offered $1,500 for the car prior to the collision, and that $800 was the best offer she received after the collision. But this evidence of isolated offers cannot in itself—and it stands alone in this case—be used *by the plaintiff* to establish market value. *Jonesboro, Etc. R. Co.* v. *Ashabranner,* 117 Ark. 317, 174 S. W. 548. In 20 Am. Juris. 341 it is stated: "As a general rule, proof of mere offers to buy or sell . . . is not competent to show the value of such property."

In the absence of other competent proof of market value, we have held that the difference in market value before and after the collision may be established by a showing of the amount paid in good faith for the repairs necessitated by the collision. *Payne* v. *Mosley*, 204 Ark. 510, 162 S. W. 2d 889, and *Kane* v. *Carper-Dover Merc. Co., supra.* Under these cases appellee is entitled to recover only the sum of $475 for damages to the car, as that is the greatest total amount shown to have been paid for repairs. So, the item of $700 must be reduced to $475.

III. *Excessive Verdict for Personal Injuries.* The jury awarded appellee $10,000 for her personal injuries and pain and suffering. She sustained some physical injuries, and a mental expert testified that she suffered from traumatic neurosis, which gave her "a floating fear —that is, she is afraid of something and does not know what it is." In *St. L. S. W. Ry. Co.* v. *Kendall*, 114 Ark. 224, 169 S. W. 822, L. R. A. 1915F, 9, Mr. Justice KIRBY referred to the earlier case of *St. L. I. M. & S. Ry.* v. *Brown*, 100 Ark. 107, 140 S. W. 279; and said:

" 'There is no market where pain and suffering are bought and sold or any standard by which compensation for it can be definitely ascertained and the amount actually endured determined,' and compensation therefor must be considered on a reasonable basis, and the jury cannot give any amount they please, although the amount of damages must be left largely to the reasonable discretion of the jury. The court is of the opinion that the amount awarded for pain and suffering is excessive also."

After we have considered all of her injuries, earning capacity, and all other factors, we have reached the conclusion that any verdict, for personal injuries and pain and suffering, for more than $5,000 would be grossly excessive.

*Conclusion*: If, within 15 judicial days, a remittitur of $225 be entered on Mrs. Kurth's judgment for damages to the automobile, and also a remittitur of $5,000 be entered on the judgment for Mrs. Kurth's personal

injuries, then the judgments will be affirmed in all other respects. If such remittiturs be not entered, then the judgments will be reversed and the cause remanded. Costs of this appeal are to be paid by the appellee.