## Maier *v.* Pittsburgh Railways Company, Appellant.

524

Argued November 17, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Patrick M. O'Donnell,* with him *Parker, Evashwick & Brieger,* for appellant.

*Cyril C. Gunst, Jr.* and *Kenneth P. Christman,* for appellees.

OPINION BY WOODSIDE, J., March 22, 1961:

These are appeals by the Pittsburgh Railways Company from the entry of judgments in favor of the plaintiffs and against it and another defendant in each of two trespass cases after a trial before the court without a jury.

These cases arose out of an accident on Fifth Avenue, Pittsburgh, at approximately 6 P.M. on July 28, 1959. The plaintiffs' automobiles were parked on Fifth Avenue. The defendant, Jones, whose automobile was parked to the rear of the plaintiffs' vehicles, drove his car out of its parked place along the curb onto the tracks of the defendant railways company whose streetcar struck Jones's automobile, and pushed it into plaintiff Maier's station wagon, which in turn struck plaintiff Diamond's automobile. Maier sued Jones and the railways company. Diamond also sued both parties. In a consolidated trial the court found for the plaintiffs against both defendants in the amounts of $730.46 and $252.50, the agreed damage to each of the plaintiffs' vehicles. The railways company appealed in each case from the entry of the judgments against it.

The question is whether there was sufficient admissible evidence to find the appellant negligent.

The evidence upon which the trial judge was asked to find negligence was exceedingly sketchy. Maier's daughter testified that she parked Maier's station

wagon along the curb, went into a building, heard a crash, looked out the window and saw that the station wagon had been hit. When she left the building, she saw that the station wagon had been pushed about 12 feet against a parking meter and forward and out a little into Diamond's car which had been parked in front of it. She testified that she saw Jones, the other defendant, there after the accident. She was asked to tell what Mr. Jones's statement was to her and replied, "Well, he had looked and pulled out . . . Jones's car was stalled on the street car track and the street car hit it, throwing it into Mr. Maier's car and throwing his car into Mr. Diamond's." The other plaintiff testified that he discussed the accident with Jones at the scene of the accident and Jones said, "the street car was coming down too fast." The trial judge admitted the above hearsay testimony into evidence over the objections of counsel for the railways company on the ground that it was part of the res gestae. Jones, himself, did not appear at the hearing and, of course, did not testify.

The streetcar operator testified that he was proceeding downgrade at approximately 15 to 20 miles per hour when the Jones car pulled in front of him from the curb without warning, and that the right front of the streetcar struck the Jones car and pushed it 15 to 20 feet into the parked station wagon. On cross-examination he was asked what Jones said after the accident and replied, "He said, 'when I looked in the mirror you were at the High School.'" The High School is "a good city block" from the scene of the accident. The above related evidence constituted everything from which the negligence of the defendants could be inferred.

In its opinion the court says it ignored the testimony of Diamond as to what Jones said to him because the statement was a conclusion. If the judgments

against the appellant are to be sustained, they must rest upon the self-serving declaration of Jones that the streetcar was a block away, when he pulled out, and stalled on its tracks.

The plaintiffs' cases of negligence against the railways company are based entirely upon the narrations of Jones made after the accident with the evident purpose of exculpating himself and placing the blame upon the streetcar motorman. This was hearsay and was not shown by the plaintiffs to be a part of the res gestae. It was error to admit this hearsay evidence.

When an utterance is used to establish that the fact asserted in it occurred as asserted, it is within the prohibition of the hearsay rule. Such utterances are admissible, however, if they are a part of the res gestae, or as Professor Wigmore says, if they are "spontaneous exclamations."

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." VI Wigmore on Evidence (Third Edition) §1747. *Allen v. Mack,* 345 Pa. 407, 409, 28 A. 2d 783 (1942).

528

We believe that the utterance of co-defendant Jones lacked the spontaneity or instinctive naturalness necessary to make it credible. See *Weshalek v. Weshalek*, 379 Pa. 544, 548, 109 A. 2d 302 (1954). It could hardly be said that the occurrence was so shocking that it would subject Jones to more than a momentary overpowering emotion. No person was hurt and comparatively little damage was done. Although the statements were presumably made within a few minutes after the accidents, exactly how long afterward and the circumstances under which they were made does not appear. See *McMillen v. Strathmann*, 264 Pa. 13, 17, 107 A. 332 (1919). They were presumably answers to inquiries made while the parties were awaiting the arrival of an officer. There is, of course, no fixed time beyond which utterances cease to be a part of the res gestae, nor are there clearly definable circumstances which will bring the hearsay within the exception, and make it admissible. Each case must depend upon its own facts. *Campbell v. Gladden*, 383 Pa. 144, 118 A. 2d 133 (1955). If the utterances of Jones were but the narration or attempted explanation of a past occurrence, and not in the nature of an emotional, impulsive outburst made under the spell of excitement or shock, they were not admissible. *Haas v. Kasnot*, 371 Pa. 580, 583, 584, 92 A. 2d 171 (1952).

There is evidence of the position of the vehicles after the accident and the order in which the four vehicles struck each other, but this alone would not establish negligence.

Having concluded that the utterances of Jones were improperly admitted, there is no evidence from which the negligence of the railways company can be inferred and judgment must be entered in its favor. Conjecture, guess, or suspicion do not amount to proof. *Lanni v. Pa. R. R. Co.*, 371 Pa. 106, 110, 88 A. 2d 887 (1952).

Even if the utterances of the codefendants were admissible as part of the res gestae, we are concerned about the sufficiency of such evidence, standing alone, to support the verdict against the appellant. Jones could have been called by the plaintiffs, in which case his codefendant, who was held liable on Jones' self-serving exculpatory narrative, would have had the opportunity to face him and cross-examine him. The plaintiffs elected not to call Jones, but to rely entirely on his explanations made at a time when it was just as reasonable to assume that he was attempting to put the blame on "the other person" as it was to assume that he was giving an accurate account of what happened. To thus deny the opportunity of a defendant to cross-examine his sole accuser does not comply with the standard of justice usually required in our courts. The res gestae rule has been referred to by our Supreme Court as a dangerous rule, and its use under the circumstances of this case would be indeed dangerous. *Deater v. Penn Machine Co.*, 311 Pa. 291, 295, 166 A. 846 (1933).

Judgments against appellant are reversed and entered in its favor.