BEGGS *v.* STALNAKER.

5-3120            372 S. W. 2d 600

Opinion delivered November 26, 1963.

*Pope, Pratt & Shamburger,* By: *Richard L. Pratt* and *Joseph L. Buffalo, Jr.,* for appellant.

*Howell, Price & Worsham,* for appellee.

JIM JOHNSON, Associate Justice. This suit involves personal injuries and property damage sustained by a driver and personal injuries sustained by a passenger in a car hit from the rear by a truck.

On June 17, 1962, appellee Lucille Smith was driving east on East Broadway Street in North Little Rock when she and the two cars ahead of hers stopped to permit another car to turn left off the street. Her mother, appellee Bertie Stalnaker, was a passenger. Appellant Carl Beggs, who was driving a dump truck, apparently had brake failure, was unable to stop and ran into the rear of appellees' stopped automobile, damaging the automobile and injuring appellees. Appellees filed separate suits against appellant which were consolidated for trial. Trial was held April 11, 1963. The jury returned a verdict of $5,000.00 for appellee Stalnaker and $22,500.00 for appellee Smith. From judgments on the verdicts, appellant has appealed, urging that the trial court erred in refusing to direct a verdict for appellant, errors in instructions, and that the verdicts were grossly excessive.

Appellant moved for a directed verdict, contending that appellees produced absolutely no evidence of any negligence on the part of appellant. (Appellant's principal contention was that this was an unavoidable accident.)

Testimony by and on behalf of appellees established that the collision did occur, the damage to the automobile by testimony on before-and-after valuations of the car, the nature and extent of appellees' injuries, diag-

nosis and prognosis. Virtually the only testimony offered by appellees relative to the truck was appellee Smith's statements that, "I looked in the rear view mirror and about a block behind us this truck went through the intersection traveling at a normal rate of speed," that there was no car to her right, also no traffic in the right hand lane (indicating that the truck could have turned right and avoided hitting the automobile), and, "Well, the truck hit us and the gravel spilled all over the street and it broke all the motor supports in my car and broke the seat track where mother was sitting and just pushed the motor clear up into the front end where it caused the radiator to burst . . ."

In a similar case this court held:

"It is insisted by the appellee that this proof falls short of establishing negligence, since the mechanical defect might have arisen suddenly and without fault on Rorke's part. Even so it was not necessary for the plaintiff to anticipate and disprove this possible explanation. By statute every motor vehicle must be equipped with adequate brakes. Ark. Stats. 1947, § 75-724. It has often been held that proof of the violation of such a safety measure is evidence of negligence. *Union Securities Co.* v. *Taylor,* 185 Ark. 737, 48 S. W. 2d 1100; *Kendrick* v. *Rankin,* 219 Ark. 736, 244 S. W. 2d 495. The appellant's testimony constituted substantial evidence to the effect that the statute had been violated; it was for the jury to say whether the defendant was guilty of negligence." *Brand* v. *Rorke,* 225 Ark. 309, 280 S. W. 2d 906.

In addition to appellees' testimony, there was some testimony adduced on behalf of appellant which tended to strengthen appellees' case. Considering all the evidence, with every reasonable inference arising therefrom, in the light most favorable to appellees, as we do to determine whether a jury question was presented, *Harrison* v. *State Farm Mutual Insurance Co.,* 230 Ark. 630, 326 S. W. 2d 803, we find that the trial court made no error in refusing to direct a verdict for appellant.

Appellant asserts that three of the court's instructions to the jury were prejudicially erroneous. The first two recite the law requiring fitness of vehicles and brakes, and the third had to do with an element of damages. These three instructions were contended to be wrong not particularly because they were erroneous statements of the law but because there was no evidence in the case to justify the giving of such instructions. We do not agree. It is our view that two of the instructions complained of were absolutely necessary in order to fairly present appellees' theory of the case to the jury for its consideration, and the third, though close, was supported by some competent evidence in the record.

Next appellant urges that the trial court erred as a matter of law by refusing to instruct the jury that in assessing damages to appellees' automobile, the cost of repairs should be considered as evidence. The general rule is that the measure of damages for injury to an automobile is the difference between the market value of the automobile immediately before and after the collision. *Payne* v. *Mosley*, 204 Ark. 510, 162 S. W. 2d 889, *Kane* v. *Carper-Dover Mercantile Co.*, 206 Ark. 674, 177 S. W. 2d 41. Two of appellees' witnesses, used car dealers familiar with that particular car, testified on the market value of that car immediately before and immediately after the collision. It is true that, in the absence of such competent proof as to the amount of damages, the difference in market value before and after the collision may be established by proof of the total amount paid for repairs necessitated by the collision. *Golenternek* v. *Kurth*, 213 Ark. 643, 212 S. W. 2d 14, 3 A. L. R. 2d 593. In the instant case there was no repair bill in evidence, and although appellee Smith testified as to what she had so far paid for repairs, she also testified that repairs were not completed. In our opinion, the jury was presented with the best evidence available, that is, competent appraisals, and the trial court did not err in refusing to instruct the jury that they should consider the cost of repairs in assessing the property damage.

Appellant's last point urged for reversal is that the verdicts are grossly excessive and are not supported by the evidence.

The jury returned a verdict of $5,000.00 for appellee Stalnaker. Mrs. Stalnaker, who is 76, was injured in the knee as well as receiving a strained neck. Immediately after the accident Mrs. Stalnaker was taken to the hospital where x-rays were taken and her leg bandaged, after which she was sent home. The following day her neck started hurting and became so painful that she went to an orthopedist the following day. His examination revealed that any attempt to turn her head left caused extreme complaint of pain and spasm of the muscle in the cervical spine; further, that she could not bow or bend her head backward. The doctor diagnosed the condition as a strain of the neck and prescribed special physiotherapy treatment at his office. She made 23 or 26 trips to the doctor's office over a period of three or four months. The doctor testified that her injuries were very painful, that "all those areas of involvement are associated with pain." At the time of trial Mrs. Stalnaker testified that, "My neck bothers me quite a bit;" that she was 75 at the time of the accident and had never had anything wrong with her neck before the accident; that she was getting along pretty good, except when the weather declares otherwise, "then at night. [she] can't sleep good."

The jury returned a verdict of $22,500.00 in favor of appellee Smith, which included property damage. Two witnesses testified on the fair market value of appellee's car before and after the accident, which placed the diminution in value at $1,275.00 to $1,300.00.

Mrs. Smith testified that immediately after the collision she couldn't focus her eyes and that her neck hurt some but not a lot at that time. Nothing was done for it at the hospital and she went home with her mother. Two days later (when she could get an appointment), after suffering extreme pain, she went to an orthopedist. He testified that when he saw her she was holding her head up with her hands, that he made one lateral x-ray

but was afraid to make a comprehensive x-ray study at that time because the necessary twisting or bending of her neck might aggravate a possible fracture or dislocation. Her injuries were diagnosed as a sprain of her neck and strain of her back. She was hospitalized as soon as possible and placed in head traction for almost four weeks, with medication and, when able, physiotherapy which was continued during the next seven months. The doctor testified that he thought her back had recovered and that he didn't think she had any permanent disability to her back. However, when asked if her neck had recovered, the doctor testified, "No, sir. I don't think it ever will recover," and estimated Mrs. Smith's permanent partial disability at twenty or twenty-five percent. The doctor also testified that he did not anticipate surgery, that she probably will require sporadic treatment, and that, "All I know, these people learn to live with themselves like they do with arthritis. They learn to live with their pain." Mrs. Smith was off work several months, at time of trial was still not working regularly on a full-time basis, still had to wear a cervical collar several days a week, and was not able to indulge in her avocations of fishing and driving.

"Under our well established rule the amount of recovery in these personal injury cases is for the jury's fair determination and when supported by substantial testimony we do not disturb the verdict unless it is shown to have been influenced by prejudice and so grossly excessive as to shock the conscience of the court." *Grandbush* v. *Grimmett,* 227 Ark. 197, 297 S. W. 2d 647.

From the testimony above and other testimony contained in the record not detailed here, we certainly cannot say that the amounts of the jury verdicts for Mrs. Stalnaker and Mrs. Smith are so grossly excessive as to shock the conscience of the court.

Affirmed.