FOSTER & CREIGHTON Co. *v.* JACKSON.

5-3527                                      388 S. W. 2d 563

Opinion delivered April 5, 1965

*Graves & Graves* and *Barber, Henry, Thurman, Mc-Caskill & Amsler,* for appellant.

*Shaver, Tackett & Jones,* for appellee.

PAUL WARD, Associate Justice. On July 12, 1963 George Jackson (appellee herein) was severely injured while on land under the control of Foster & Creighton Company (an appellant herein) by and through its agent and employee, Charlie Howell, (also appellant herein). Hereafter Jackson may be referred to as "appellee", the first mentioned appellant as "company", and Howell as "agent". A brief summary of the essential facts and circumstances pertaining to this case are presently set forth below. These facts and circumstances are either undisputed or they are sustained by substantial evidence.

The company is a Tennessee corporation (authorized to do business in Arkansas) engaged in the business of constructing hard-surface or concrete roads. At all times pertinent the company was engaged (under contract) in constructing Interstate Highway 30 through the City of Little Rock. To facilitate the handling of the large amount of cement required the company leased a portion of a railway yard from the Chicago Rock Island and Pacific Railway Company near the intersection of East Fourth Street and Byrd Street within the City of Little Rock. The company maintained a huge cement

storage bin or tank located some twenty or thirty feet south of the leased railroad spur or track. In order to transfer the cement (from a railroad car placed on the spur) the company maintained an electrically driven underground auger about sitxeen feet long running south from the spur toward the large storage bin. This auger, which had nine inch screw blades, rested in a metal box just beneath the surface of the ground—the box being covered with metal plates approximately fourteen inches wide and sixteen to seventeen inches long. These plates were removable. The company's agent (Howell) was in complete charge of the premises and fixtures just described.

The injury to appellee occurred in this manner— when appellee arrived with a large truck-trailer load of cement for delivery to the company, the agent directed him to back the truck up alongside the spur track where an empty railway car had been placed. The rear portion of the trailer was close to the empty car, about two feet from the auger. When the truck was parked the agent and appellee completed arrangements to pump the cement from the truck to the car on the spur. Then appellee started the pump on his truck, and the agent removed a plate covering the auger and turned on the electric motor on the auger. Thereupon the agent left to get a drink and he heard appellee hollering. The agent hurried back and found appellee's leg was caught in the auger. According to appellee he had walked around the truck, to perform his duty, when his left leg was caught in the auger where the agent had removed the metal plate.

Appellee's leg remained in the auger (which had been stopped by the agent) from forty five to sixty minutes, when it was cut loose with a blow torch. During all this time appellee was conscious and suffered great pain. He was removed to a hospital where his leg was amputated about three inches above the knee. After twelve days appellee was removed to his home near Foreman where he was given further medical treatment.

A trial resulted in a jury verdict and a judgment in favor of appellee in the amount of $125,000. Appellants now seek a reversal on two grounds: *One,* the trial court erred in giving appellee's instruction number 8; *Two,* the judgment is excessive.

*One.* Instruction number 8 reads as follows:

"In this case, the plaintiff alleges that one or more of the defendants were negligent in one or more of the following particulars:

"(a) In permitting, maintaining and operating an open and unprotected underground auger, so camouflaged and concealed by cement that the openings in the auger encasement were unnoticeable and the auger invisible—knowing, or by the exercise of ordinary care and precaution should have known that persons coming in contact therewith would likely by injured.

"(b) In permitting, and engaging in, hazardous operations upon premises to which the plaintiff and others were exposed without providing safeguard devices for the protection of plaintiff and others.

"(c) In failing to warn plaintiff of the auger operations and the danger of walking in the vicinity of the auger.

"(d) In failing to keep a proper lookout for plaintiff and others properly upon the premises, and

"(e) In permitting and maintaining unsafe premises for plaintiff and others properly upon the premises.

"In order to recover, the plaintiff claiming damages has the burden of proving each of three essential propositions:

"First: That he sustained damages.

"Second: That the party or parties from whom he seeks to recover was negligent, and

"Third: That the negligence of the party, or parties, from whom he seeks to recover, was the proximate cause of the mishap.

"In the defense of the claim of George C. Jackson, each of the defendants denies any negligence on the part of either of them; denies the extent of damages claimed; and alleges that Plaintiff George C. Jackson negligently caused his own injuries in one or more of the following particulars:

"(a) In failing to exercise ordinary care for his own safety.

"(b) In assuming the risk of injury and damages, and

"(c) In failing to keep a proper lookout, knowing, or by the exercise of ordinary care and precaution should have known, that the auger was in operation.

"A party who asserts the defense of negligence on the part of one claiming negligence has the burden of proving this defense."

Appellants objected to the above instruction:

". . . for the reason that said instruction is an incorrect declaration of the applicable law, and is not supported by the evidence introduced during the trial of the case; and further, that it imposes upon defendants a degree of care higher than is required by law."

In addition to giving appellee's requested instruction No. 8 the court gave fourteen other separate instructions requested by appellee and ten separate instructions requested by appellants. Suffice to point out that these several instructions covered the contentions and theories of the case for both sides.

For two reasons we are unable to find any reversible error in the giving of said instruction number 8: (a) The objection was insufficient and (b) The instruction was a correct declaration of the applicable law.

(a) It is obvious that instruction number 8 covers several distinct features of the case and the law, but the objections fail to call to the attention of the trial court any specific objectionable wording, or rule of law. The trial court was entitled to have a specific objection of

this type so that it might make any necessary correction. This well established rule was clearly set forth in the early case of *Missouri & North Arkansas R.R. Co.* v. *Duncan,* 104 Ark. 409, 415, 148 S. W. 647. Among other things it was there said:

"The purpose of making an objection specifically to an instruction is to call to the attention of the trial court the exact error complained of, so as to give it an opportunity to correct the instruction in that particular."

(b) Appellants ably argue in their brief to the effect that instruction number 8, in requiring them "to keep a proper lookout for plaintiff and others properly upon the premises", imposed upon them a greater burden than the law requires. We cannot agree with this contention of appellants, and they cite no authority directly in point to sustain it. The rule which we think is applicable in this case was stated by this Court in the early case of *Hobart-Lee Tie Co.* v. *Keck,* 89 Ark. 122, 128, 116 S. W. 183, as follows:

"In the case of *St. Louis, I.M. & S. Ry. Co.* v. *Dooley,* 77 Ark. 561 [92 S. W. 789], the court said: 'The bare permission of the owner of private grounds to enter upon his premises does not render him liable for injuries received by them on account of the condition of the premises. But if he expressly or impliedly invites, induces or leads them to come upon his premises, he is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the premises, if such condition was the result of his failure to use ordinary care to prevent it, and he failed to give timely notice thereof to them or the public.' "

To the same effect, see *St. Louis, I.M. & S. Ry. Co.* v. *Wirbel,* 104 Ark. 236, 149 S. W. 92, and *Alfrey Heading Co.* v. *Nichols,* 139 Ark. 462, 215 S. W. 712. Likewise, in the case of *Armour & Co.* v. *Rose,* 183 Ark. 413, 36 S. W. 2d 70, it was held appellant was required to keep a guard (or lookout) at an unlighted elevator shaft to protect

an invitee. At pages 423-424 of the Arkansas Reports, this Court said:

"The rule is also well established that a licensee who goes upon the premises of another for that other's purpose by that other's invitation, is no longer a bare licensee. He becomes an invitee, and the duty to take ordinary care to prevent his injury is at once raised, and for violation of that duty the owner is liable if injury results to the invitee by reason of the negligence of the owner. [Cases cited.]"

In the case here under consideration there can be no doubt (in fact appellants do not attempt to deny) that appellee was an implied invitee upon the premises; it is not even contended by appellants that appellee was told about the exposed auger, nor is it shown that he by the exercise of due care should have known of the existing hazard. All issues concerning appellee's contributory negligence and assumption of the risk were properly submitted to the jury without objection. It is our conclusion therefore that the trial court did not commit reversible error by giving instruction number 8 number the facts and circumstances heretofore set out.

Two. The only other contention raised by appellants on appeal is that the judgment, in the amount of $125,000, is excessive and should be reduced by us. Again, we cannot agree with appellants, even though the contention (as is usual in such cases) does give us some concern. The rule which we must apply here is the one put into appropriate words by the late Justice Holt, in the case of *Grandbush* v. *Grimmett*, 227 Ark. 197, 297 S. W. 2d 647, where it was stated:

"Under our well established rule the amount of recovery in these personal injury cases is for the jury's fair determination and when supported by substantial testimony we do not disturb the verdict unless it is shown to have been influenced by prejudice or so grossly excessive as to shock the conscience of the court."

It must be admitted that the above rule is not always easy to apply in all cases with uniformity, because every-

one's conscience may not be equally susceptible to shock, and conscientious judges do not always agree on what constitutes substantial evidence. Nevertheless, we do not seem to be able to frame a better rule because we have subsequently approved almost verbatim the above rule on several occasions. *Beggs* v. *Stailnaker*, 237 Ark. 281, 372 S. W. 2d 600; *Williams V. Clark*, 238 Ark. 447, 382 S. W. 2d 366. See also the case of *Fred's Dollar Store* v. *Adams*, 238 Ark. 468, 382 S. W. 2d 592 where we said:

"The ultimate question is whether the verdict shocks the conscience of the court or demonstrates that the jurors were motivated by passion or prejudice."

Appellants cite several cases where we have reduced jury verdicts, using the same rule above set out. But, as was said in the *Adams* case, *supra,* "In a case of this kind precedents are of scant value. No two cases are so nearly identical that essential points of difference cannot be found."

We think the testimony sustains the full amount of the judgment. The great weight of the testimony shows that, as a result of the accident and the loss of his leg, appellee's loss in wages (when reduced to its present value) amounts to approximately $76,000. Add to that amount the sum of $2,500 expended (and to be expended) for hospital and medical expenses. It is undisputed that appellee's leg was caught in the auger for forty five to sixty minutes during which time he was conscious and suffered such excruciating pain that he thought he was going to die, and that when released he was taken to a hospital where his leg was amputated three inches above the knee. Not only has appellee already suffered pain as above described, but the testimony shows that he will always suffer what is known as "phantom limb pains". It is difficult to envision a situation where one could suffer more pain and anguish than appellee suffered during the time his leg was in the clutches of the blades of this auger, being conscious and not knowing if he would survive. There is nothing which indicates to us

the jurors (in reaching their verdict) "were motivated by passion or prejudice".

In consideration of what has been pointed out above we are unwilling to say the size of the judgment rendered herein is excessive.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.