**RALSTON PURINA COMPANY,**
Appellant,

v.

**PARSONS FEED AND FARM SUPPLY,**
**Inc., Thurman Parsons, Inez Parsons,**
**Glenn Parsons and Alma Parsons, Ap-**
pellees.

**No. 17987.**

United States Court of Appeals
Eighth Circuit.

Aug. 2, 1966.

2. "The Defendant: Is there no way I can prove my innocence?

The Court: You had your chance today and I was not convinced of it."

58

James R. Hale, Fayetteville, Ark., for appellant. John A. Fraser and F. W. Schwarz, St. Louis, Mo., were on the brief..

W. B. Putman, Fayetteville, Ark., for appellees and filed brief.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and MEREDITH, District Judge.

MEHAFFY, Circuit Judge.

Appellant, Ralston Purina Company (Purina) brought suit in the United States District Court against appellees, Parson Feed and Farm Supply, Inc., Thurman Parsons, Inez Parsons, Glenn Parsons Feed and Farm Supply, Inc., two feed accounts totaling $116,471.60.[1] Parsons counterclaimed alleging that Purina breached an alleged oral contract to purchase from it hatching eggs and chicks causing Parsons damage in the sum of $64,429.47; and also breached an agreement to allow discounts on bulk feed purchases to Parsons' damage in the sum of $16,295.00.

During pretrial proceedings, Purina's feed accounts were not disputed and the District Court therefore found Parsons liable to Purina in the sum of $116,-471.60, and set the case for trial to a jury on the issues contained in the counterclaim. Upon trial the jury found for Parsons on the alleged purchase contract in the sum of $64,429.47, but found against Parsons on the discount issue. The trial court entered judgment setting off the amount of the jury award against the amount Parsons owed Purina, leaving Purina with a judgment in the sum of $52,042.13.

Purina appeals from the judgment allowing the setoff. Diversity of citizenship and the amount in controversy estab-

1. The individuals are parties by reason of having executed guaranty agreements for payment of the feed accounts.

lish jurisdiction. The substantive law of Arkansas controls.

We reverse on account of the trial court's refusal to permit Purina to introduce evidence that its district sales representative, Hagan, lacked authority to enter into the contract and for failure to give a requested instruction on burden of proof as to an agent's authority to act for his principal. Since a remand is called for, we find it in order to briefly discuss other issues as well.

Purina first assigns as error the court's refusal to grant its motion for directed verdict and motion for judgment n. o. v. because (a) there is no substantial evidence to support the jury's verdict on the counterclaim and (b) the alleged oral contract relied upon by Parsons was voidable under the Arkansas statute of frauds.

Glenn Parsons is the president and chief operating officer of Parsons and his father, Thurman Parsons, although inactive in the company's operations, was an officer and stockholder and was informed on important matters concerning the company's activities. Both Glenn and his father testified that Parsons entered into an oral agreement with Purina through its district sales manager, Hagan, whereby Parsons agreed to build chicken houses, costing between three and four hundred thousand dollars, and fill them with laying flocks upon Purina's agreement to take the entire production of eggs or chicks at a specified price. They further testified that shortly after the first delivery under the contract the agreed price was not thereafter paid, and the difference in what was paid and what should have been paid under the oral contract amounted to the sum of $64,429.47.

Two written documents were introduced into evidence, both being contracts between Parsons and Jack White's Hatcheries, Inc. Purina was not a party to the written contracts. Parsons' evidence, however, is to the effect that it had entered into an oral contract with Purina prior to these written documents and that Purina had subsequently brought Jack White's Hatcheries into the picture for the purpose of accepting delivery of the eggs and making the payments therefor. In other words, it was Parsons' contention that these contracts were merely evidence of the terms of their prior oral contract with Purina; and they were looking solely to Purina to comply with the contract; and that Hagan assented therein and advised that the written contracts were merely "memoranda."

The existence of the oral contract was denied by Purina, who offered evidence tending to prove that Purina had never heard of such a contract until Parsons was presented with a demand for payment of the feed bills. Regardless of this or other evidence, the jury had the right to believe the version of the two Parsons witnesses that an oral contract was entered into and breached. Our function as a reviewing court is to consider the evidence in the light most favorable to the prevailing party and we must assume that all conflicts in evidence were resolved by the jury in favor of the prevailing party. Figge Auto Co. v. Taylor, 325 F.2d 899, 901 (8th Cir. 1964); Kelly v. Layton, 309 F.2d 611, 613 (8th Cir. 1962) and cases cited. There was ample evidence to submit this factual issue to the jury and the trial court properly refused the motion to direct a verdict for insufficiency of evidence.

On the day before trial, Purina amended its reply to the counterclaim by pleading the Arkansas statute of frauds. Its motion for directed verdict, however, did not specify this ground and neither was there any suggestion in trial evidence that Purina relied on this assignment. Furthermore, it was not called to the trial court's attention in any of the proffered instructions. Neither was there any objection made to the court's charge by reason of failing to include this issue. It was not until the motion for judgment n. o. v. that this was called to the trial court's attention. Fed.R.Civ.P. 50(a) provides *inter alia* that "[a] motion for a directed verdict shall state the specific grounds therefor"; and Rule

50(b) provides for the filing of a motion for judgment n. o. v. to have judgment entered "in accordance with his motion for a directed verdict." The purpose of requiring that specific grounds be stated in the motion is to apprise the trial court of the movant's position. Randolph v. Employers Mut. Liability Ins. Co., 260 F.2d 461, 465 (8th Cir. 1958). Nowhere in the course of the trial did Purina give any indication of reliance on the statute of frauds defense. Insofar as it would appear to the trial court, this defense might well have been abandoned. This court ruled in Jones Truck Line v. Argo, 237 F.2d 649, 653 (8th Cir. 1956):

> "Finally, defendant charges error in denying its motion for judgment notwithstanding the verdict. As a condition precedent to the right of a party to interpose such a motion he must have made a proper motion for a directed verdict. * * *
>
> "Here there was no proper motion for a directed verdict, there being no specific grounds stated therein. The motion for judgment notwithstanding the verdict must stand or fall on the sufficiency of the motion for a directed verdict. No error can be predicated on denying the motion for judgment notwithstanding the verdict in the instant case."

We are not unmindful of rulings such as Quint v. Kallaos, 161 F.2d 605 (8th Cir. 1947) and Cox v. City of Freeman, Missouri, 321 F.2d 887, 891 (8th Cir. 1963), holding that when a motion is granted the adverse party who did not object to failure of the motion to state specific grounds therefor cannot raise such an objection in the appellate court. We are dealing here with a situation where the motion was not granted and Quint and Cox, therefore, are distinguishable and inapposite.

■ It is not the function of this court to canvass the record and pick out fragments of evidence to determine if the Arkansas statute of frauds has any application here. We do not try cases de novo. Unless the legal issues are properly raised below, we will not be concerned except in extraordinary cases, and then only to avoid a clear miscarriage of justice. This is not such a case. The court properly overruled the motion for judgment n. o. v.

In our opinion, the trial court erred in sustaining an objection to the testimony of Purina's agent, Hagan, which halted the witness' testimony concerning his lack of authority to make the contract upon which the counterclaim was based.

The counterclaim did not specifically allege that Parsons was relying on an oral contract or one that was made for Purina by its agent, Hagan. The pleading merely alleged the existence of a contract between Purina and Parsons and Purina's reply thereto was a denial of the existence of any such contract. It developed upon discovery depositions, however, that a written contract existed between Jack White's Hatcheries, Inc., and Parsons, but Purina was not a signatory thereto. Apparently Purina was of the impression that this was the contract Parsons relied upon in its counterclaim pleading. At trial, however, Parsons produced another written contract with Jack White's Hatcheries, similar to the one produced at the pretrial depositions stage. Both contracts were introduced into evidence. As stated, Parsons did not rely upon these contracts to recover from Purina except for the purpose of showing a memorandum of confirmation of the terms of the alleged oral contract previously made with Purina through its agent, Hagan. Parsons' witnesses were permitted to testify as to the pre-existing oral contract and further to testify as to other contracts made with them by Purina through agent Hagan. Thus, despite the generality of the pleadings, Parsons placed in issue an alleged oral contract which necessarily involved Hagan's authority to bind Purina. Once this issue was raised and fully explored by Parsons, Purina should not have been halted in its effort to refute the authority of Hagan to enter into the contract

in its behalf. Fed.R.Civ.P. 15(b) provides:

> "* * * [W]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

■ There can be no question but that witness Hagan, Purina's agent, was a proper witness to testify as to the scope and extent of his authority to act for Purina. Worcester Felt Pad Corp. v. Tucson Airport Authority, 233 F.2d 44, 59 A.L.R.2d 1121 (9th Cir. 1956); Golenternek v. Kurth, 213 Ark. 643, 212 S.W. 2d 14, 3 A.L.R.2d 593 ((1948); 3 Am. Jur.2d Agency §§ 352 and 353 (1962); 3 C.J.S. Agency § 324 (1936).

■ Inasmuch as the issue of Hagan's authority to act was made by Parsons and apparently acquiesced in by Purina, it was proper for Hagan to give testimony to prove the scope and extent of his authority. Within the context of the record here, Purina was entitled to fully explore and dispute by any competent evidence the lack of authority for Hagan to act for it. It would be a strange rule indeed that would permit a party to make proof of an oral contract and authority of an agent to execute it, and deny the adverse party the right to refute the same by any competent evidence whether direct or circumstantial. We think the trial court erred in sustaining the objection to witness Hagan's testimony as to lack of his authority to make the contract.

Purina requested the court to give the following instruction which was refused:

> "You are instructed that the burden is upon the plaintiff to show by a preponderance of the evidence that Tom Hagan had authority to make the contract concerning the production and purchase of the hatching eggs mentioned in the counterclaim, and unless you so find, your verdict should be in favor of the plaintiff on that part of the counterclaim relating to said eggs."

■ The refusal of the court to give this instruction in the light of the evidence that developed at trial was error. As Parsons' counterclaim was based entirely upon the oral contract, the crux of the case was whether Hagan entered into the contract with authority to bind Purina. Purina's theories of defense were two-pronged: (1) that the contract was not entered into by Hagan; (2) that Hagan was without authority to make the contract binding Purina. Thus, assuming Hagan did make the contract, the issue of Hagan's authority was vital, yet the court's charge did not furnish the jury any guide or rule regarding the determination of the issue of the agent's authority. The purpose of instructions is to inform the jury as to the law and to provide the jury a proper guide to assist in reaching a verdict. Terminal Railroad Ass'n v. Howell, 165 F.2d 135 (8th Cir. 1948).

In order to reach a proper verdict in the instant case, the jury should have been advised of the rules of law applicable to the agent's authority. This was not done although the court did give a general instruction on burden of proof.[2]

There is no question but that the proffered instruction is a correct statement of the law. This court so held in Johnson v. Mosley, 179 F.2d 573 (8th Cir.

---

2. "The mere fact that defendants' answer alleges an agreement in the counterclaim does not establish there was an agreement or resulting damages, and the burden of proof is upon the defendant counterclaimants to prove by a preponderance of the evidence that such an agreement existed and that it was breached by the plaintiff and the amount of damages, if any, suffered by the defendant counterclaimants as shown by a preponderance of the evidence to a reasonable certainty.

"In other words, your conclusion must be based upon the evidence, and any alleged agreement and damages resulting from its breach must be established by a preponderance of the evidence, and unless the defendant counterclaimants have so established their case, they cannot recover, and you will find the issues in favor of the plaintiff and against the defendants on their claim."

1950), a diversity case involving Arkansas law:

"It is the rule that 'A party who seeks to charge a principal for the contracts made by his agent must prove that agent's authority; and it is not for the principal to disprove it.' The burden is on such party to prove the agent had authority to make the particular contract which in fact was made, 'not to make contracts generally * * *.' " (179 F.2d at 581)

■ As against a more general or abstract charge, a party is entitled to a specific instruction on his theory of the case if there is supporting evidence and if proper request is made. In Chicago & N. W. Ry. v. Green, 164 F.2d 55 (8th Cir. 1947), this court said at page 61:

"It has long been the rule that, as against a mere general or abstract charge, a party is entitled to a specific instruction on his theory of the case, if there is evidence to support it and if a proper request for such an instruction is made. (Citing cases.) In fact, even a request for an instruction which is not entirely perfect may in some situations impose upon the court the duty to give a more specific instruction on a particular issue, where it soundly appears that such an instruction is needful to enable the jury to intelligently determine the question. (Citing cases.)"

Vital in this case was resolution by the jury, under proper instructions, of the question whether Hagan was authorized to make the contract on behalf of Purina. Certainly, it was one of Purina's theories of defense. And, the court should have either given the requested instruction or in some language of its own advised the jury of the proper rules applicable in order for a finding that Hagan had authority to make the contract.

We do not find it necessary to review in detail the other instructions requested by Purina and refused by the court. Some were preemptory instructions which were not proper as there was sufficient evidence to submit the case to the jury. We have carefully reviewed the other refused instructions and find they are adequately covered by the court's charge.

In contemplation of a new trial, it is appropriate for us to discuss the admission into evidence of copies of two letters purportedly written by Glenn Parsons to Tom Hagan. Purina contends the admission of these letters was error because of lack of proof that they were mailed. The proof on mailing consisted solely of Glenn Parsons' testimony that he typed the two letters, placed them in a basket for outgoing mail so that the bookkeeper would mail them on his way home in the afternoon; and that this was a routine procedure in the office for posting outgoing mail. The bookkeeper did not testify with respect to the office routine or that he mailed the particular letters. Hagan denied receiving them.

Counsel for both parties cite Arkansas cases on this question, but candidly admit that there is no Arkansas ruling precisely in point. They also cite cases from other jurisdictions reflecting conflicting views.

■ In the instant case, however, it is noted that the court admitted the letters only for the limited purpose of showing "whether the letters were in fact written to Mr. Hagan in his capacity as a representative of the Ralston Purina Company." We can but assume that the jury followed the court's instruction. Yeargain v. National Dairy Products Corp., 317 F.2d 779 (8th Cir. 1963). Assuming the letters were improperly admitted into evidence, no prejudice could have resulted under the limiting instruction of the court as there was no dispute that Hagan was the representative of Purina. Additionally, we do not reverse a trial court's decision on a doubtful question of state law.

For the errors noted, the judgment is reversed and remanded.