John HOLLAND *v.* Hughland H. BAGLEY
and June BAGLEY

73-224                                    505 S.W. 2d 228

Opinion delivered February 19, 1974

*Hardin, Rickard & Harmon*, for appellant.

*Charles A. Wade,* for appellees.

CARLETON HARRIS, Chief Justice. Hughland H. Bagley[1] and June Bagley, appellees herein, instituted suit against John Holland, appellant herein, alleging that on August 5, 1971, a car driven by Holland ran into the rear end of the Bagley automobile, while it had temporarily stopped at a stop sign. June Bagley sought $1,000 for alleged injuries and Hughland Bagley asserted that his automobile was damaged to the extent of $400.00. Holland answered, denying liability, denied that June Bagley was injured and stated that any in-

---

[1]This name appears in the record and in the judgment, although the briefs use the name "Hughlon".

jury and damages, if any, were caused by this appellee's negligence. On trial, the Saline County Circuit Court, sitting as a jury, found damages for Mr. Bagley in the amount of $390.90 representing property damage and for June Bagley in the amount of $35.00 for personal injuries. From the judgment so entered, appellant brings this appeal. For reversal, it is simply asserted that the court erred in rendering these judgments since there was insufficient evidence to support the damages awarded Mr. Bagley and no evidence to support the damages awarded June Bagley.

We agree with appellant that this judgment will have to be reversed. Hughland Bagley did not testify and, as to damages, the record reveals that June Bagley testified that the back end of the automobile was damaged and that she took it to a repair shop and had an estimate made as to the damage. Her testimony then reveals the following:

"Q I ask is this a copy of the estimate they prepared?

Mr. Rickard: Objection.

The Court: Overruled.

A This is it.

Q Was the car repaired in line with this estimate?

Mr. Rickard: I object unless she can introduce the repair bill.

A Yes, si·

Q How much was the amount of those damages?

A I don't remember.

Q The amount of the estimate, whatever the amount of the estimate is. Is that what was paid for the repairs.

A Yes.

Mr. Rickard: Note our objection.

The Court: Overruled."

The estimate does not appear in the record, and it will be noted in the above quote that no introduction of the exhibit was tendered. On cross-examination, the record reveals the following:

"Q How much did it cost you to have this repaired?

A I don't remember.

Q It was quite a bit less than this estimate, wasn't it?

A No.

Q Well, did you pay for it?

A No, my insurance company did.

Q You know how much they paid for it?

A No, sir.

Q Did you have the work done?

A Well, I brought it to the shop and they did the work.

Q You know what was done to it?

A The back end.

Q You know whether or not the gas tank was replaced?

A Yes. It had a hole knocked in it and leaked all the gas out.

Q You know whether it was patched or replaced?

A Something was done.

Q You know whether the rear deck lid was replaced or repaired?

4

A What is the rear deck lid, the trunk?

Q Yes.

A It was replaced.

Q You know whether the right tail light assembly was replaced or repaired?

A I don't remember.

Q The point is, Miss Bagley, you don't know what amount of money was paid to repair your automobile, do you?

A It was in the neighborhood of three hundred or four hundred dollars. That is what I know.

Q But you don't know how much, do you?

A No, sir."

As to personal injury her testimony is rather brief, and not at all revealing. The record reflects the following:

"Q Was anyone injured?

A No, sir.

Q Did you have to go to a doctor or did you go to a doctor for examination?

A Yes.

Q What did he find?

A Nothing.

Q He checked you and released you?

A And gave me some x-rays.

Q You remember the amount of those medical expenses?

A No."

This was all the testimony as to damages except that some photographs depicting the back end of the car were offered, and Holland testified that there was only a dent in the back on the bumper.

It is at once apparent that the judgment for the $35.00 personal injuries cannot stand since June Bagley simply testified that she did not know what the charge was for the x-rays, and stated that she was not injured; nor was the estimate (which, as stated, does not appear in the record) sufficient evidence to support the award for damage to the automobile. We have said many times that the proper measure of damages is the difference between the market value of the automobile before the collision, and the value of same after the collision. In *Golentrnek* v. *Kurth*, 213 Ark. 643, 212 S.W. 2d 14, we said:

"In the absence of other competent proof of market value, we have held that the difference in market value before and after the collision may be established by a showing of the amount paid in good faith [2] for the repairs necessitated by the collision. (Citing cases)."

Four other cases are cited by appellee, but they do not support this particular judgment. In *Watson* v. *White*, 217 Ark. 853, 233 S.W. 2d 544, there was evidence given by the repairman as to certain repairs that had been made on the automobile, but he did not remember the exact charge, nor was a bill presented. He just testified that it was a "little over $100.00." The court, at the conclusion of plaintiff's case, granted a directed verdict for defendant and on appeal, we affirmed this action by the trial court, stating:

"It is not shown whether certain parts were replaced or merely repaired and the amount of the charges is indefinite. The installation of new parts in a 1941 model automobile may enhance the value a great deal and thereby materially affect the difference in market value

[2] *Bouvier's Law Dictionary*, Vol. 1 (Third Revision), p. 1359 defines "good faith" as:

"An honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious."

before and after the injury. Under the testimony adduced here, we cannot say that the trial court erred in directing a verdict for defendant."

In *Beggs* v. *Stalnaker,* 237 Ark. 281, 372 S.W. 2d 600, we again cited the general rule and then said:

"Two of appellees' witnesses, used car dealers familiar with that particular car, testified on the market value of that car immediately before and immediately after the collision. It is true that, in the absence of such competent proof as to the amount of damages, the difference in market value before and after the collision may be established by proof of the total amount paid for repairs necessitated by the collision. *Golenternek* v. *Kurth,* 213 Ark. 643, 212 S.W. 2d 14, 3 A.L.R. 2d 593. In the instant case there was no repair bill in evidence, and although appellee Smith testified as to what she had so far paid for repairs, she also testified that repairs were not completed. In our opinion, the jury was presented with the best evidence available, that is, competent appraisals, and the trial court did not err in refusing to instruct the jury that they should consider the cost of repairs in assessing the property damage."

In *Slaughter* v. *Barrett,* 239 Ark. 957, 395 S.W. 2d 552, a repair order was introduced in evidence, reflecting the total cost of repairs to the automobile involved and the opinion reflects further:

"In the case at bar Slaughter, who is himself an automobile mechanic, described the specific replacements and repair work that were necessitated by the collision. The repair bill reflects the labor and materials that went into the job. Under the rule approved by our cases Slaughter's testimony and the repair bill itself were sufficient to justify the trial court in submitting the question of damages to the jury."

In *Payne* v. *Mosley,* 204 Ark. 510, 162 S.W. 2d 889, the actual cost of the repairs was also shown.

As reflected by the record herein quoted, the proof in the

present case is far different from the cases cited by appellee. In accordance with what has been said, the judgment is reversed and the cause remanded to the Saline County Circuit Court.

It is so ordered.